OPINION OF THE COURT
Simons, J.
Defendant has been convicted after trial of murder, second degree, for the stabbing death of his former girlfriend. The evidence against him included a statement he made in the police station approximately an hour after the police arrested him in his apartment without a warrant. Defendant contends that the statement should have been suppressed because it was obtained in violation of constitutional guarantees against illegal searches and seizures (see, NY Const, art I, § 12; US Const 4th Amend). The People contend that the entry and arrest were consensual but maintain that even if illegal under Payton v New York (445 US 573), the confession was admissible because it was sufficiently attenuated from the illegality. This is particularly so, they claim, because at the time of the arrest the police were acting on probable cause. The trial court found the entry and arrest were not consensual and that finding, undisturbed by the Appellate Division, is binding on this court. Accordingly, the issue before us is limited to whether the causal connection between the illegality and the confession was attenuated.
Ordinarily, questions of attenuation are mixed questions of law and fact that we may review only to ascertain whether there is support in the record for the determination of the lower courts (see, People v Borges, 69 NY2d 1031, 1033; People v Conyers, 68 NY2d 982, 984; People v Bastidas, 67 NY2d 1006, 1007). In this case however, we must look to the legal sufficiency of the evidence, particularly the weight to be attributed to probable cause in cases involving Payton violations. We conclude defendant’s statement should have been suppressed on Fourth Amendment grounds and therefore reverse the order of the Appellate Division and order a new trial.
On January 11, 1984 the police found the dead body of Thelma Staton in her apartment and investigation quickly *617 developed probable cause to believe that defendant Bernard Harris was the killer. Five days later, on January 16, 1984, three police officers went to his apartment, without an arrest warrant, to take him into custody. The officers knocked on the apartment door but there was no response so one officer went down a fire escape to the window of the apartment, knocked on it, and said "Police”. As he did so, the other two officers, with guns drawn and at their side, again knocked on the front door. Defendant looked out the peephole of the door and one officer displayed his badge. Defendant then opened the front door and allowed the officers to enter. One of the officers testified that as he did so defendant stated that he was glad the police had come for him. The police then read defendant his Miranda rights. He acknowledged that he understood them and stated that he was willing to answer their questions. The officers told defendant that he was suspected of murdering Thelma Staton and the officers testified that after they did so defendant poured himself a glass of wine and then admitted that he had killed the victim with a knife. He was arrested, taken to the station house where he was again given Miranda warnings, and made the written inculpatory statement to the police which was received at trial and is the subject of this appeal. Subsequently, defendant was given Miranda warnings a third time, just prior to the making of a videotaped interview with an Assistant District Attorney. However, this time when asked whether he wanted to speak about the death of Thelma Staton, defendant answered that he was tired and stated: "Well, I really don’t know what to say right now * * * I have said all I can say.” Nonetheless, a full statement was videotaped in which defendant again admitted that he had murdered Staton.
After a Huntley hearing, Supreme Court suppressed the first statement, given in defendant’s apartment, as the product of an illegal arrest and it suppressed the third videotaped statement given to the Assistant District Attorney, because it was taken after defendant had stated that he did not wish to be questioned further. It denied the motion to suppress the second statement finding the Miranda warnings had been repeated and defendant waived his rights before making the statement. The court’s findings, undisturbed by the Appellate Division, included findings that the police had probable cause to arrest defendant at the time they entered his apartment, that they went there with the intention of making a warrant-less arrest in his home and that defendant opened the door *618 and permitted the police to enter because he was submitting to their authority. The trial court concluded that "no clearer violation” of Payton v New York (445 US 573, supra) could be established.
Defendant was convicted after a bench trial and the judgment was affirmed by a divided Appellate Division. Justice Sandler, with whom Justice Wallach concurred, agreed with the Supreme Court’s determination that the police had made an illegal arrest but nevertheless found attenuation based upon the existence of probable cause. He also found that defendant gave his written statement at the station house not because he felt committed by what he had said at his apartment but because he had made a clear decision to admit his guilt prior to the illegal entry of the police.[1] The trial court made no such finding and Justice Sandler cited no evidence in the record to support his conclusion.
Justice Asch, joined by Justice Kassal, concurred in affirmance in a separate writing. He found that defendant had consented to the police entry but held that, assuming a Payton *619 violation, any "taint” resulting from the illegal arrest was removed by the lapse of time between the initial confession and the rereading of the Miranda warnings before defendant made his second confession.
Justice Rosenberger dissented and voted to reverse the judgment and remand the matter for a new trial. He concluded that there was no significant intervening event between the defendant’s initial statement in his apartment, found by the hearing court to be the result of his unlawful arrest, and the written statement given at the police station.
In Payton v New York (445 US 573, supra), the Supreme Court held that arrest was a species of seizure and that a warrantless, nonconsensual entry into a suspect’s home to make a routine felony arrest violates the Fourth Amendment. Noting that the Fourth Amendment protects individual privacy in a number of settings, it pointed out that in none of them is the zone of privacy more clearly defined than in "the unambiguous physical dimensions of an individual’s home” (445 US, at 589, supra). Accordingly, it held that the fruits of illegal entries must be suppressed even though the police might have probable cause to conduct a search or effectuate an arrest outside the home without a warrant. Under the rule of Payton, this arrest was clearly illegal, as the courts below found, and it only remains to determine the consequences of the illegal police conduct.
In Wong Sun v United States (371 US 471), the Supreme Court first considered whether a confession, otherwise admissible, must be suppressed if it is the "fruit” of an antecedent illegal arrest. The court held that verbal evidence "which derives so immediately from an unlawful entry and an unauthorized arrest” is no less the product of official illegality than the more common physical, tangible evidence obtained as a direct result of an unlawful invasion. Therefore, the exclusionary rule operates to bar from trial any verbal statements obtained as a direct result of an unlawful invasion (id., at 485). In Brown v Illinois (422 US 590), the Supreme Court clarified the Wong Sun decision and addressed the proper effect that should be given to Miranda warnings administered after an illegal arrest.
In Brown, defendant was unlawfully arrested and taken to a police station where some two hours later, after being given proper Miranda warnings, he made the incriminating statements used against him at trial. Justice Blackmun, speaking *620 for the court, noted the Fourth and Fifth Amendment concerns in the case and stated that for the causal chain between the illegal arrest and the subsequent statements to be broken Wong Sun requires not merely that the statement meet the Fifth Amendment’s standards but also requires "consideration of a statement’s admissibility in light of the distinct policies and interests of the Fourth Amendment” (id., at 602). The court reasoned that if Miranda warnings, by themselves, were sufficient to attenuate the taint of an unconstitutional arrest, any incentive to avoid Fourth Amendment violations would be substantially impaired and the exclusionary rule diluted. Thus, the court held that Miranda warnings in and of themselves do not purge the taint of the original illegality. The court rejected a "but for” standard that would require suppression of all statements made after police illegality, however, and held that the question of whether a confession is the product of a free will under Wong Sun must be answered by reviewing the facts of each case. Three of the factors to be considered, the court said, are the temporal proximity of the arrest and the confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct. The fact that the statement was freely made after the proper reading of Miranda warnings is necessary for the purposes of the Fifth Amendment, but this type of "voluntariness” is merely a threshold requirement in Fourth Amendment analysis for "if the Fifth Amendment has been violated, the Fourth Amendment issue would not have to be reached” (Dunaway v New York, 442 US 200, 217).
In the present case, defendant was given Miranda warnings and freely gave his statements at the apartment and at the police station and thus the Fifth Amendment threshold requirement has been satisfied. But because defendant was illegally arrested in his home, the court must determine, by applying the factors delineated in Brown, whether the statement given in the police station was sufficiently purged of the taint of this Fourth Amendment Payton violation or the causal connection between the illegality and the confession remains. The trial court’s conclusion of attenuation rested on its finding that Miranda warnings had been repeated before the statement was made. The two opinions for affirmance in the Appellate Division based their finding of attenuation on the repetition of the Miranda warnings, the lapse of time between the arrest and the station house statement and the benign nature of the police conduct because of the existence of *621 probable cause. The courts below did not identify any intervening event, other than the Miranda warnings, between the arrest and the making of the statement at the police station.
Considering first temporal proximity, defendant’s written statement was given approximately one hour after the illegal arrest, a considerably shorter period than the time which elapsed between the illegal arrest and the suppressed statement in Brown v Illinois (supra). The People argue that the shortness of the interval between the arrest and the statement in the police station and the officers’ testimony concerning defendant’s conduct in the apartment indicates the confession was an act of free will formed before the police entry. It can be argued with equal force that the statement was given by defendant in submission to the authority of the police who had illegally entered his home and arrested him. In short, the temporal relationship between the illegal arrest and the statement is, at best, ambiguous. Standing alone, it cannot serve to attenuate the illegality and it becomes important to look for events occurring within the interval between arrest and confession (see, Dunaway v New York, 442 US 200, 220 [Stevens, J., concurring], supra).
In this case, the short time period and the continuous police presence with defendant from the time he was arrested until the time he gave his statement, without any legally significant intervening event, indicate that the station house statement was no less a product of the Fourth Amendment violation than was the statement defendant made in his apartment which the courts below suppressed. Reading defendant his Miranda rights again may have cured the Fifth Amendment violation but, as Brown v Illinois (supra) held, standing alone it could not attenuate the link between the Fourth Amendment violation and the statement. Having just given a statement in his apartment which inculpated him in the crime, defendant had already committed himself and "there was little incentive to withhold a repetition of it” (United States v Johnson, 626 F2d 753, 759, affd 457 US 537). Thus, there is no evidence relating to the first two Brown factors which would break the link between the illegal arrest and the incriminating statement. More importantly the third factor, the purpose and flagrancy of the official misconduct, militates against a finding of attenuation. Not all evidence connected with police misconduct must be suppressed. The principal purpose of the exclusionary rule is deterrence and at some point the causal relationship between the evidence and the illegality became so *622 attenuated that suppression of the evidence exacts a far too heavy price and the remedy of exclusion no longer justifies its cost. The "taint” doctrine must be extended far enough to serve the purpose of deterrence, however, and thus the purpose and flagrancy of the police conduct becomes a legitimate and important factor in the equation. If the impetus for the illegality has been a purposeful violation of the Fourth Amendment more is required to attenuate the causal chain between it and the confession. But it should be noted that the converse is not true. An otherwise inadmissible confession may not be admitted into evidence simply because there has been no showing of purposeful misconduct. Misconduct is a factor, not a controlling factor, and while the severity of the police illegality may fortify a finding that strong deterrence is required, attenuation is not established by showing that the police conduct was undertaken in good faith (Taylor v Alabama, 457 US 687; see generally, 4 LaFave, Search and Seizure § 11.4 [b], at 397-398 [2d ed]).
In the case before us, the trial court found the police went to defendant’s apartment to arrest him and, as the police conceded, if defendant refused to talk to them there they intended to take him into custody for questioning. Nevertheless, they made no attempt to obtain a warrant although five days had elapsed between the killing and the arrest and they had developed evidence of probable cause early in their investigation. Indeed, one of the officers testified that it was department policy not to get warrants before making arrests in the home. From this statement a reasonable inference can be drawn, as the dissent below did, that the department’s policy was a device used to avoid restrictions on questioning a suspect until after the police had strengthened their case with a confession (see, 124 AD2d 472, 478). Thus, the police illegality was knowing and intentional, in the language of Brown (supra, at 605) it "had a quality of purposefulness”, and the linkage between the illegality and the confession is clearly established. Moreover, these illegal efforts continued after defendant’s detention because the Assistant District Attorney subsequently obtained a third statement from him unlawfully.
The analysis highlights the distinction between this case and cases such as People v Conyers (68 NY2d 982) and Rawlings v Kentucky (448 US 98) on which the People and the dissent rely. In Conyers the arrest was not only free of flagrant and purposeful misconduct, it was legal when made. Given the appropriateness of police conduct at the time and *623 the fact that defendant’s statement was made after he had been left alone for two hours, we affirmed the Appellate Division’s factual finding of attenuation. In Rawlings defendant was detained for 45 minutes while two police officers went to obtain a warrant. The Supreme Court cautioned that under strict custodial conditions such a short lápse of time might not purge the taint of an illegal arrest. However, in the case before it the court denied suppression because the arrest was made in the "congenial” atmosphere of defendant’s home and his statement was made "spontaneously”, to avoid implicating a friend in the crime (id., at 108-109). The dissent also relies on People v Rogers (52 NY2d 527, cert denied 454 US 898) and the Appellate Division’s decision in People v Matos (93 AD2d 772). Both cases involve situations in which defendant was confronted with incriminating evidence independently obtained and the courts held that the intervening events broke the causal chain between the illegality and confession. The Rogers case is also distinguishable because of the elapsed time, the nature of the police conduct, and the additional intervening factor that defendant had talked with his brother during his three-hour detention. In the case before us, the police deliberately made an illegal arrest, according to the practice of the department, to obtain a confession of defendant. None of the courts below found any intervening event sufficient to attenuate that illegality, nor do we.
Two Justices of the Appellate Division distinguished this case because the police had probable cause to arrest the defendant. They reasoned that the defendant’s arrest could have taken place lawfully anywhere except in his apartment and that this "major difference in the character of the underlying illegality” (124 AD2d, at 473) supported a determination that there had been sufficient attenuation to purge the primary taint of the illegal arrest. Judge Titone’s concurring opinion states the distinction intended, that the wrong in Payton cases such as this lies not in the arrest, "but in the unlawful entry into a dwelling without proper judicial authorization”.[2] The argument is contrary to the express language of Payton’s holding that "a 'basic principle of Fourth Amend *624 ment law’ [is] that searches and seizures inside a home without a warrant are presumptively unreasonable” notwithstanding probable cause (445 US 573, 586, supra). We implicitly rejected it in Conyers. Indeed, we applied that interpretation earlier in Riddick v New York (445 US 573), the companion case of People v Payton. In Riddick, the police made a warrantless felony arrest based upon probable cause in defendant’s apartment and, as an incident of that arrest, seized tangible evidence. Upon remand from the Supreme Court, we suppressed the evidence without comment and ordered a new trial (People v Riddick, 51 NY2d 764; cf., People v Payton, 51 NY2d 169 [remitted for a new hearing on exigent circumstances]). Had the arrest been legal we would have held the evidence properly obtained as incident to a legal arrest or remitted for a determination on the question. Implicit in our decision was a holding that because of the illegal entry, and notwithstanding probable cause for the arrest, the evidence was illegally acquired.
Indeed, the issue is no longer open for discussion. United States v Johnson (626 F2d 753, affd 457 US 537, supra), presented factual circumstances almost identical to the present appeal. The police had entered defendant’s apartment and arrested him without a warrant although they possessed probable cause. He confessed at the apartment and again at the police station. The Circuit Court of Appeals, applying Payton, held the arrest was illegal and, after applying the rule in Brown v Illinois (supra), it suppressed both confessions. On appeal to the Supreme Court, the People argued that the statements should not be suppressed because the rule in Payton should not be applied retroactively. The Supreme Court, without questioning the application of Payton by the Circuit Court, affirmed its determination that the arrest was illegal and that the confessions must be suppressed. That holding controls here.
Finally it should be noted that as a matter of policy, deterring Payton violations by suppressing confessions causally related to them is no less important than deterring investigative detentions or street arrests made on less than probable cause.[3] All are entitled to the same level of scrutiny *625 and evidence obtained as a result of such misconduct must be suppressed unless the taint of the illegality has become sufficiently attenuated.
Accordingly, the order of the Appellate Division should be reversed, defendant’s statement suppressed and a new trial ordered.

. The dissent relies on similar reasoning, but the weakness of the argument is demonstrated by contrasting it with People v Emanuel (98 Mich App 163, 295 NW2d 875). In Emanuel, the People introduced evidence that before his illegal arrest defendant had voluntarily told two police officers that he had information about the crime. The officers told him to go to the police station and report it but when he did not appear, two other officers sought him out and asked to talk with him. Defendant’s first words on meeting them were that he had "intended” to talk to them. Under these circumstances, the court could hardly be faulted for taking defendant’s words at face value. The proof of intent in Emanuel is far different from the police officers’ testimony concerning defendant’s statements in this case. In Emanuel there was evidence of antecedent circumstances, i.e., events transpiring prior to the illegal arrest, as well as defendant’s unambiguous statement when the police arrived. The only evidence supporting voluntariness in the present case is the testimony of police officers who conducted the illegal arrest and there is no indication that the trial court accepted it. Indeed, the court explicitly found that defendant’s actions were in submission to the authority of two police officers at the front door, displaying a badge and with guns drawn, and a third at the window of his apartment.
In response to the dissent’s statement that the courts "apparently” held the entry into defendant’s home was not consensual, the trial court found, and its findings were undisturbed by the Appellate Division, that "no clearer violation” of Payton could be established. Nor were the police present to "investigate”. The trial court found that the police went to defendant’s apartment to make a warrantless arrest and labeled the claim that they were only there to investigate "nonsense”. Thus, the dissent, while rejecting the Brown test for measuring the taint, relies on a "sensitive assessment” of facts, as it finds them, which are contrary to the findings of the courts below.

. This view has been accepted by some courts (see, State v Thomas, 405 So 2d 462 [Fla App]; Thompson v State, 248 Ga 343, 285 SE2d 685). The effort to separate the two events and hold that the confession need not be suppressed because the arrest is legal and has been described by a prominent authority as a "gross misapplication” of the inevitable discovery rule (see, 4 LaFave, Search and Seizure § 11.4 [b], at 397).

. As to the dissent’s argument that deterrence is not required in Payton cases because the police will not make warrantless arrests at the home and risk having confessions suppressed, the simple answer is that they did so here and apparently do so routinely in this police department.
*625 As to the dissent’s argument that the majority is suppressing because there was probable cause, the position of the majority is that suppression is required because there was an illegal arrest, notwithstanding probable cause, and the causal relationship between the illegality and the evidence obtained was not attenuated.