83 N.Y.2d 76 (1993)
629 N.E.2d 384
607 N.Y.S.2d 912
The People of the State of New York, Respondent,
v.
Angel Claudio, Appellant.
Court of Appeals of the State of New York.
Argued October 7, 1993.
Decided December 21, 1993.
Proskauer Rose Goetz & Mendelsohn, New York City (William E. Hellerstein of counsel), for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (John M. Castellano, Barry A. Schwartz and Steven J. Chananie of counsel), for respondent.
Judges SIMONS, HANCOCK, JR., BELLACOSA and SMITH concur with Judge LEVINE; Judge TITONE concurs in result in a separate opinion; Chief Judge KAYE taking no part.
*78 LEVINE, J.
In the spring of 1980, defendant was indicted for the murder of a 16-year-old high school student. The indictment was based principally on defendant's own inculpatory statements, which had been made to the District Attorney's representative upon the advice of defendant's retained attorney. In 1983, this Court affirmed the denial of defendant's motion to suppress these inculpatory statements after rejecting appellate counsel's contention that they were the result of a violation of defendant's Sixth Amendment right to the effective assistance of counsel (People v Claudio, 59 N.Y.2d 556 [Claudio I]). Defendant appears before us once again following a ruling by the United States Court of Appeals for the Second Circuit that a writ of habeas corpus should be granted and defendant released from State custody "unless the state affords [defendant] an opportunity to present [his] Article 1, § 6 state law claim to the New York Court of Appeals" (Claudio v Scully, 982 F.2d 798, 806). We now hold, as we did in Claudio I, that the ineffectiveness of defendant's first retained counsel affords no basis for reversal of his conviction.
We accept the premise, which was shared by every court that has considered this case, that retained counsel's conduct in advising defendant to confess to the police  at a time when there was no concrete evidence against him and no possibility of a plea offer  represented gross professional incompetence (see, Claudio I, supra, at 560; 85 AD2d 245, 251; Claudio v Scully, 982 F.2d 798, 802, supra). The dispositive issue, therefore, is whether our holdings that the State constitutional right to counsel indelibly attaches when a criminal suspect invokes that right by obtaining an attorney (see, People v Skinner, 52 N.Y.2d 24; People v Hobson, 39 N.Y.2d 479; People v Arthur, 22 N.Y.2d 325) imply a constitutional State guarantee of effective assistance of counsel when an attorney enters a case on a suspect's behalf. We conclude that, except in most unusual circumstances not present here, the State is not charged with the responsibility of guaranteeing effective legal representation upon the entry of counsel at the preaccusatory, investigatory stage of a criminal matter, i.e., before the commencement of formal adversarial judicial criminal proceedings.
Defendant acknowledges that all our relevant precedents have involved some law enforcement official's disregard of or *79 interference with the attorney-client relationship by interrogation of the defendant in the absence of retained or assigned counsel. However, as we held in Claudio I, in the instant case, the prosecutor and the police scrupulously honored defendant's relationship with his retained attorney. Furthermore, defendant has not cited any case declaring a State constitutional right to effective assistance of counsel at the preaccusatory stage of a criminal investigation. However, defendant argues that logically, once his State right to counsel indelibly attaches, the panoply of constitutional guarantees associated with the right to counsel spring into being. Defendant supports this deduction largely with the statement in People v Skinner (supra) that the bar to an effective waiver of the right to counsel in the absence of a suspect's attorney "simply recognizes the right and need of an individual to have a competent advocate at his or her side in dealing with the State" (52 NY2d, at 29 [emphasis supplied]).
In our view, Skinner and its predecessors (supra) are inapposite to this case. Our holdings that the right to counsel indelibly attaches upon the entry of counsel at the preaccusatory stage involve different constitutional concerns and interests from the guarantee of effective legal representation. Moreover, any implication that the language employed in Skinner to which defendant cites was intended broadly to extend the right to effective legal assistance to the preaccusatory stage, is dispelled by the more specific effective representation cases decided by this Court subsequent to Skinner.[*]
To be sure, we have developed a somewhat different test for ineffective assistance of counsel under article I, § 6 of the New York Constitution from that employed by the Supreme Court in applying the Sixth Amendment (compare, People v Baldi, 54 N.Y.2d 137, 147, supra, with Strickland v Washington, 466 US 668, 687). Nonetheless, the basic purposes and constitutional interests at stake under both constitutional guarantees of an adequate legal defense in a criminal case are the same: (1) the preservation of our unique adversarial system of criminal justice, the underlying presupposition of which "`is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free'" (United States v Cronic, 466 US 648, 655 [quoting Herring v New York, 422 US 853, 862]); *80 and (2) the correlative necessity to provide a defendant with an advocate sufficiently competent to insure "fairness in the adversary criminal process" (United States v Morrison, 449 US 361, 364 [emphasis supplied]). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial" (United States v Cronic, supra, at 658). These concerns are subsumed in our adoption of the standard of meaningful representation for the fulfillment of the State's own constitutional responsibility to insure effective assistance of counsel to the criminally accused (People v Baldi, supra, at 147). Moreover, the guarantee exists independent of any prosecutorial or judicial misconduct interfering with defense counsel's effectiveness (Strickland v Washington, 466 US, at 686, supra).
The foregoing intrinsic premise and purposes of the constitutional right to effective representation  as the bulwark of our adversary system of criminal justice and an absolute necessity to achieve fairness to the accused within that adversary system  imply that the guarantee of effective assistance of counsel is not triggered until adversarial judicial criminal proceedings have been instituted against a defendant, and the Federal cases so hold. Thus, in Kirby v Illinois (406 US 682) the Supreme Court held that no rights under the Sixth Amendment accrue until the commencement of the criminal action.
"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the `criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable" (id., at 689-690).
The language of our State Constitution also suggests that the guarantee of effective assistance of counsel does not arise until the commencement of adversarial judicial proceedings: "In *81 any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions" (NY Const, art I, § 6 [emphasis supplied]). Thus, it has been held that, generally, it is only at arraignment immediately after the start of judicial criminal proceedings that an indigent defendant first becomes entitled to the assignment of counsel (see, Strickland v Washington, 466 US, at 685, supra; see also, People v Samuels, 49 N.Y.2d 218, 223).
Our cases holding that a suspect's preaccusatory right to counsel indelibly attaches when retained or assigned counsel assumes representational responsibility do not implicate the same purposes and concerns as underlie the constitutional guarantee of effective assistance of counsel. Our rationale in those cases for applying an indelible right to counsel at the preaccusatory stage is essentially prophylactic, to prevent official overreaching and to insure that any waiver of the right to counsel is untainted. Thus, we have explained that a criminal suspect, by invoking the right to counsel, expresses a lack of competence to deal with law enforcement authorities without legal advice and, hence, needs the same protection before waiving the right to counsel (People v Cunningham, 49 N.Y.2d 203, 209). And, in People v Hobson (39 N.Y.2d 479, supra), we emphasized that "the presence of counsel is a more effective safeguard against an involuntary waiver of counsel than a mere written or oral warning in the absence of counsel" (id., at 484 [emphasis supplied]), and that procurement of a waiver of counsel in the absence of the suspect's attorney violates ethical precepts barring interference with the attorney-client relationship (id.). We also said in People v Bell (73 N.Y.2d 153): "[o]ur ruling [in People v Skinner, supra] was designed to prevent the police from rendering the right to counsel ineffective by questioning the defendant about matters relating to the subject of the representation in the absence of counsel retained on the matter" (73 NY2d, at 160 [emphasis supplied]).
Because People v Skinner and its predecessors (supra) deal not with the role of defense counsel in preserving our adversary system of criminal justice, but rather "`[p]reserving the integrity of an accused's choice to communicate with police only through counsel'" (Minnick v Mississippi, 498 US 146, 153 [quoting Patterson v Illinois, 487 US 285, 291]), they have no precedential value for extending the State's guarantee of effective assistance of counsel to a suspect, such as defendant, *82 at the preaccusatory stage. More to the point are our holdings in Claudio I and in People v Beam (57 N.Y.2d 241).
In Claudio I, we ruled that defendant's Sixth Amendment right to effective assistance of counsel had not yet become operative and, hence, was not violated by his attorney's incompetent advice to confess to the police at the preaccusatory stage of the criminal proceedings in which he was involved. Our reasons for so holding are equally applicable to defendant's claim here. In Claudio I, we noted that, because defendant's confession occurred before the accusatory stage had begun, he would not have been entitled to assigned counsel when he was interrogated by the police had he then requested rather than retained a lawyer (see, People v Samuels, supra; Strickland v Washington, supra). We then reasoned that "[i]nasmuch as defendant would have had no right to insist that a lawyer be provided for him when he talked to the authorities, he should not be rewarded by a suppression order merely because he chose to bring a lawyer who proved valueless" (Claudio I, 59 N.Y.2d 556, 561, supra). A second ground we expressed in Claudio I for refusing to impose at the preaccusatory stage an obligation under the Sixth Amendment to provide effective representation was that, prior to the beginning of formal adversary judicial proceedings, the courts have neither the ability to detect nor the means to remedy incompetent or disloyal conduct of defense counsel (id., at 562). The same is true with respect to the State right to effective representation. Indeed, any intervention by State agents to remedy any suspected incompetent advice of defendant's attorney would have been barred by our holdings in People v Skinner and People v Hobson and by the ethical precepts invoked in those cases.
In People v Beam (supra), we flatly rejected the claim that the preaccusatory right to counsel of Skinner created a corresponding State obligation to provide effective assistance of counsel at the same stage. We said in People v Beam:
"When a person has had the benefit of counsel and then chooses to waive one of his rights, the police are not required to question the validity of that decision as long as they are assured that the decision was made in consultation with the suspect's attorney. * * * As long as the police honored the defendant's right to counsel, and determined that he was speaking with them on advice *83 of counsel, the defendant was afforded all the protections encompassed by the constitutional right to counsel" (id., at 254-255).
Thus, although in People v Beam we discussed the possibility that the retained attorney's improvident advice was not attributable to incompetence but rather to the incomplete information the defendant gave his attorney, the central holding of Beam is that the right to counsel that had indelibly attached by the entry of a retained attorney at the preaccusatory stage was simply the right not to have the attorney-client relationship interfered with or disregarded by law enforcement authorities. This right to counsel at that stage does not guarantee the efficacy of the attorney's representation; it only requires law enforcement agencies to honor fully "`the integrity of an accused's choice to communicate with police only through counsel'" (Minnick v Mississippi, 498 US 146, 153, supra).
Because the law enforcement authorities in this case did fully honor the right to counsel of defendant which attached when he retained and then consulted with his attorney, he has not established any violation of article I, § 6 of our New York Constitution arising out of his attorney's incompetent advice.
Accordingly, on reargument, the order of the Appellate Division should be affirmed.
TITONE, J. (concurring).
Utilizing principles that were developed largely in the Sixth Amendment context, a majority of this Court has concluded that the indelible State constitutional right to counsel that was formulated in such cases as People v Arthur (22 N.Y.2d 325), People v Hobson (39 N.Y.2d 479), People v Rogers (48 N.Y.2d 167), People v Cunningham (49 N.Y.2d 203) and People v Skinner (52 N.Y.2d 24) does not encompass the right to legal assistance that is competent and meaningful. Because the majority's analysis reduces what was previously regarded as an important substantive guarantee to a mere technical device for regulating police conduct, I cannot concur in its opinion. Although I agree that the State Constitution does not afford defendant a basis for relief under the circumstance of this case, my reasons are so different from those of my colleagues that a separate exposition is necessary.
The central issue raised by this reargued appeal is whether a suspect is deprived of a right conferred by article I, § 6 of the State Constitution when the attorney he or she has *84 retained has provided incompetent and affirmatively damaging advice. The majority does not dispute that the "indelible" right to counsel attached in these circumstances under People v Skinner (52 N.Y.2d 24, supra), in which it was held that a represented suspect has the right to the advice and assistance of his retained counsel when confronted by the police  even in a noncustodial setting. Thus, the only question that divides us is whether we should ascribe any concrete legal significance to Skinner Court's statement that the right it was recognizing there was that "of an individual to have a competent advocate at his or her side in dealing with the State" (id., at 29 [emphasis supplied]).
The majority suggests that the quoted language in Skinner may never have been "intended broadly to extend the right to effective legal assistance to the preaccusatory stage" (majority opn, at 79). However, Skinner involved the Arthur-Hobson-Cunningham branch of the right to counsel (see, People v Bing, 76 N.Y.2d 331, 339; People v Skinner, supra, at 28-29), which only comes into play when a represented suspect has not yet been formally charged. Thus, the Court's recognition of a right to a "competent" advocate could only have been intended to refer to "the preaccusatory stage."
The majority also asserts that subsequent "more specific" cases make clear that the Skinner preaccusatory right does not include the right to effective counsel. But, three of the four cited cases (United States v Cronic, 466 US 648; United States v Morrison, 449 US 361; Strickland v Washington, 466 US 668) were decided under the Federal Constitution's Sixth Amendment, which does not contemplate a preaccusatory attachment of the right to counsel at all (see, Kirby v Illinois, 406 US 682). Further, all four of the cited cases involved the specific question of defense counsel's trial performance. It is thus not remarkable that each of the cited cases discusses the right to "meaningful representation" in terms of its relationship to "`fair trial[s],'" the "adversarial system" and the "`adversary criminal process'" (majority opn, at 79, 80). In light of their contexts, the judicial statements on which the majority relies have little bearing on the entirely separate and novel question presented here: the scope and effect of New York's pretrial right to counsel.
Similarly, since the New York State right to counsel has always been deemed to be broader than its Federal counterpart, it does not aid analysis to invoke, as the majority has *85 (majority opn, at 80), the Kirby v Illinois holding that no rights under the Sixth Amendment accrue until the commencement of the criminal action (supra, at 689-690). Once again, that circumstance is irrelevant in a jurisdiction such as ours, which has long recognized the existence of substantial preaccusation rights under the State constitutional right-to-counsel guarantee.[1]
Even more fundamentally, the majority's core rationale  that the previously recognized preaccusatory right to counsel "do[es] not implicate the same purposes and concerns as underlie the constitutional guarantee of effective assistance of counsel" (majority opn, at 81)  does not withstand close scrutiny. As the majority itself acknowledges, the purposes of the Arthur-Hobson-Cunningham branch of the right to counsel are to equalize the imbalance in the relative positions of official interrogators and their subjects and to protect the integrity of any waiver the suspect might make in the face of the State's powerful law enforcement machinery (People v Bing, 76 N.Y.2d 331, supra; see, People v Cunningham, supra, at 207). These aims cannot be achieved if the right to counsel can be satisfied by the presence of an attorney whose performance does not meet even minimal standards of competence. An attorney who, as here, provides such "woefully inadequate" counsel (see, People v Claudio, 59 N.Y.2d 556, 560) as to prompt his client to make an "uninformed waiver" (People v Claudio, 85 AD2d 245, 252) certainly cannot be said to have fulfilled the goal of "`[breathing] life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary'" (People v Bing, supra, at 339, quoting People v Hobson, supra, at 484).
In the final analysis, the majority cites no case which holds or even suggests that the right to the assistance of counsel at preaccusatory phases requires the presence of a licensed but not necessarily competent attorney. Indeed, no prior decision has attempted to separate the notion of a right to counsel from the notion of a right to effective representation. This dearth of authority is not surprising, since the proposition that the right to counsel can exist separate and apart from *86 the right to competent counsel is inconsistent with the "`long * * * recognized'" maxim "`that the right to counsel is the right to the effective assistance of counsel'" (United States v Cronic, supra, at 654, quoting McMann v Richardson, 397 US 759, 771, n 14). "To hold otherwise `could convert the [right to] counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel'" (United States v Cronic, supra, at 654, quoting Avery v Alabama, 308 US 444, 446).
Finally, contrary to the majority's statements, the fact that law enforcement authorities are generally not in a position to monitor the quality of a suspect's representation does not provide a sound rationale for accepting incompetent and even worthless legal counsel in fulfillment of a suspect's Arthur-Hobson-Cunningham right. The right to counsel is a freestanding constitutional guarantee that exists separate from, and independent of, any of the constitutional proscriptions against official misconduct (see also, Strickland v Washington, supra, at 686 [noting that a defendant may be deprived of the Sixth Amendment right to effective assistance either by the actions of government or by counsel's own actions]).[2] Thus, the fact that there has been no police impropriety in cases such as this does not in itself vitiate the theoretical merits of a claim based on the ineffectiveness of a suspect's counsel during the preaccusatory proceedings.
Nonetheless, the absence of unlawful conduct by law enforcement authorities does have critical legal significance when considered in the context of the specific suppression remedy that this defendant seeks. As this Court has recently observed, the primary rationale for the suppression of otherwise trustworthy evidence is the value that that remedy has for deterring official misconduct (Matter of Boyd v Constantine, 81 N.Y.2d 189, 195; see, People v Drain, 73 N.Y.2d 107, 110; People v Harris, 72 N.Y.2d 614, 621-622; People v Boodle, 47 N.Y.2d 398, 404; People v McGrath, 46 N.Y.2d 12, 21). Further, the suppression remedy is to be avoided when the deterrent benefit to be derived therefrom would be minimal (see, e.g., *87 Matter of Boyd v Constantine, supra; People v Drain, supra; People v McGrath, supra; People v Arnau, 58 N.Y.2d 27).
Here, the constitutional "wrong" was perpetrated not by a servant of the State, but rather by a private attorney acting in his capacity as the suspect's legal adviser. The law enforcement authorities who dealt with defendant after he surrendered himself were not in any way responsible for the woefully incompetent and injurious advice defendant's attorney gave and had no duty to ensure that defendant's right to the competent advice by counsel was honored (see, People v Beam, 57 N.Y.2d 241). Indeed, the State agents who questioned defendant were not even in a position to intervene had they wished to do so, since any such intervention would have undermined the sanctity of the attorney-client relationship (see generally, People v Skinner, supra, at 29-30, citing New York State Bar Assn Code of Professional Responsibility DR 7-104 [A] [1]; ABA Code of Professional Responsibility DR 7-104 [A] [1]; People v Hobson, supra, at 484-485). Thus, there was no official impropriety and no deterrent benefit whatsoever to be gained in these circumstances. Consequently, no sound legal purpose would be served by the exclusion of the statements obtained as a result of defendant's attorney's substandard performance.
I recognize that it may seem somewhat anomalous to some to argue for recognition of a constitutional right on the one hand while concluding on the other that the violation of that right has no remedy in these circumstances. Despite the potential incongruity inherent in that position, I prefer it to the position the majority has adopted, which radically diminishes the preaccusation right to counsel and dilutes this Court's traditionally steadfast commitment to "safeguarding the right of an accused to have the assistance of an attorney at every stage of the legal proceedings against him" (People v Cunningham, 49 N.Y.2d 203, 207, supra). I continue to believe that the presence of a trained and competent attorney is "the most effective means we have of minimizing the disadvantage at which an accused is placed when * * * directly confronted with the awesome law enforcement machinery possessed by the State" (id., at 207; see, People v Settles, 46 N.Y.2d 154, 161).[3] My conclusion that suppression is unwarranted in these circumstances *88 merely reflects my additional belief that the extraordinary price of excluding trustworthy and probative evidence ought not to be exacted when there is no countervailing societal benefit to be gained (cf., People v Bing, 76 N.Y.2d 331, 348, supra).
Accordingly, I concur in the Court's decision on reargument to affirm.
On reargument, order affirmed.
NOTES
[*] It is also dispelled by the fact that, virtually contemporaneously with Skinner, this Court declined to adopt a "competency" standard for the right to effective assistance of counsel (see, People v Baldi, 54 N.Y.2d 137, 146-147).
[1] For this reason, the majority's reason for invoking the language of article I, § 6 of the State Constitution is obscure. While it is true that the constitutional provision, literally read, creates a right to counsel only for "any trial in any court," it cannot seriously be disputed that the provision's guarantee, as construed by the judiciary, extends to pretrial and even preaccusatory investigative proceedings.
[2] Indeed, when an appellate court reverses a conviction on the ground of ineffective assistance of trial counsel, its decision is based not on any error or wrong committed by the trial court but rather on the impairment of the adversary system that occurs when the accused is not represented in accordance with at least minimal standards of professional competence (see, Strickland v Washington, supra, at 684-686).
[3] The Court's opinion leaves open the possibility of an exception to its holding in the event of "most unusual circumstances" different from those present here (majority opn, at 78). However, the Court's rationale does not suggest any analytical basis for such an exception. Additionally given the unquestionably egregious performance of defendant's first attorney, it is difficult to imagine what "unusual circumstances" the majority would recognize as a basis for affording a preaccusatory right to representation that is "effective."