2 N.Y.3d 235 (2004)
810 N.E.2d 415
778 N.Y.S.2d 133
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
COREY JONES, Appellant.
Court of Appeals of the State of New York.
Argued February 19, 2004.
Decided April 6, 2004.
*236 Legal Aid Society, New York City (Kerry Elgarten and Laura R. Johnson of counsel), for appellant.
Charles J. Hynes, District Attorney, Brooklyn (Scott J. Splittgerber and Leonard Joblove of counsel), for respondent.
Judges G.B. Smith, Rosenblatt, Read and R.S. Smith concur with Judge Graffeo; Judge Ciparick dissents and votes to reverse in a separate opinion in which Chief Judge Kaye concurs.

*237 OPINION OF THE COURT
GRAFFEO, J.
The issue in this appeal is whether the State Constitution prohibits the introduction in evidence of eyewitness lineup identifications, where the lineup was conducted after police arrested defendant at his residence without a warrant or consent to enter, in violation of Payton v New York (445 US 573 [1980]; see People v Levan, 62 NY2d 139 [1984]). Under the circumstances of this case, we conclude that the exclusionary rule does not require the suppression of the identification evidence.
In October 1998, a woman was accosted in her apartment building by a man who followed her onto an elevator. The man confronted her, stated that he had just been in a shootout and asked for money so he could flee from the area. When the woman refused, the man tore a chain from her neck, took her watch and put his hand in her pocket. The assailant fled after the woman began spraying him with Mace.
Another woman was robbed under similar circumstances later that month. While she and her children were entering an elevator in their apartment building, a man approached her, claimed that he had been in a shootout and shot someone, and declared that he "needed cab fare to get away." After the woman told him that she couldn't help him, the man reached under his jacket and apologized to her, stating "I wouldn't do this, if I didn't have to, but I'm desperate." Although the woman initially refused to give him anything, she eventually handed over $30. When the man tried to reach into her pocket, the woman slapped his hand away. Placing his hand on the shoulder of her child, the man told the woman not to make him do "nothing [he didn't] want to do." He then ripped a necklace from the woman and demanded her earrings. She gave him one but tossed the other onto the floor of the elevator. The man picked up the earring and fled from the elevator.
Eventually the victim of the second robbery met with a detective who arranged for her to view computerized mug shot photographs. She examined six photographs at a time for approximately 20 minutes, but did not find anyone who resembled the man that robbed her. The detective then produced three additional photographs that he printed from the computer. The woman identified one of the mendefendantas her assailant. *238 Based on that identification, defendant's photograph was inserted into a six-person photographic array that was shown to the victim of the first robbery. She also identified defendant as the man who accosted her.
Having probable cause to believe that defendant was the perpetrator of both robberies, but without obtaining an arrest warrant, the detective and several police officers went to the apartment where defendant lived with his mother. When defendant's mother answered the door, the detective told her that he was looking for her son. She left the front door open as she went back into the apartment to find defendant. The police officers followed her inside, located defendant and placed him under arrest. Approximately five hours later, police placed defendant in a lineup and the two robbery victims separately identified him.
Defendant was subsequently indicted for a variety of crimes stemming from the two incidents, including two counts of robbery in the first degree. He moved to suppress identification evidence at trial, claiming that the photographic identification procedure employed with the second victim was unduly suggestive. Defendant also argued that because the police entered his home without consent or an arrest warrant in violation of Payton v New York (445 US 573 [1980]), the lineup identifications should be suppressed as the tainted product of the illegal entry.
Supreme Court denied the motion to suppress identification evidence, initially determining that the photographic identification procedure was not unduly suggestive. The court further ruled that, although the police had violated the Payton rule when they entered defendant's home and arrested him in the absence of consent or a warrant, the lineup identifications did not stem from the Payton violation and, as such, suppression was not warranted. Supreme Court adhered to its decision upon reargument.
After the presentation of evidence at trial, including the victims' in-court identifications of defendant and testimony concerning the lineup identifications,[1] defendant was convicted of one count of robbery in the first degree relating to the second incident. The jury, however, was unable to render a unanimous *239 verdict on the charges related to the first robbery. The Appellate Division affirmed defendant's conviction and a Judge of this Court granted leave to appeal.
As a threshold matter, it is undisputed that the arrest of defendant in his home, although supported by probable cause due to the victims' photographic identifications, was effectuated unlawfully. The Fourth Amendment clearly "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest" (Payton v New York, 445 US at 576) in the absence of "exigent circumstances" (Kirk v Louisiana, 536 US 635, 638 [2002]). Here, the People never argued that an emergency justified the warrantless entry and Supreme Court expressly found that defendant's mother did not provide consent before the police entered the residence. Because the People do not challenge Supreme Court's undisturbed findings of fact, we accept that a Payton violation occurred.[2]
The primary question before us is whether the exclusionary rule bars the People's use of lineup identifications conducted in the absence of counsel subsequent to an arrest made in violation of the Payton doctrine. In People v Harris (77 NY2d 434 [1991]), we held that the Search and Seizure Clause of the State Constitution generally requires the suppression of incriminating statements elicited during a custodial interrogation conducted without counsel following a Payton violation. We are now asked to determine whether the rationale of Harris carries equal strength in post-Payton lineup identification situations.[3]
The resolution of this issue requires an examination of the factual and procedural context of Harris in our Court, both *240 before and after the United States Supreme Court reviewed the case. In our initial decision, we concluded that the Federal Constitution required suppression of "any verbal statements obtained as a direct result of an unlawful invasion" unless the statements were attenuated from the Payton violation (People v Harris, 72 NY2d 614, 619 [1988]). The Supreme Court, however, ruled that suppression was unwarranted and reversed (New York v Harris, 495 US 14, 21 [1990]). The Court explained that the exclusionary rule was inapplicable "because the rule in Payton was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects . . . protection for statements made outside their premises where the police have probable cause to arrest" (id. at 17). Thus, under the Fourth Amendment of the Federal Constitution, evidence procured after the police leave an arrestee's residence is not considered to be "the product of" a Payton violation (id. at 19).
On remand, we considered whether suppression was necessary under article I, § 12 of the State Constitutionthe provision prohibiting unlawful searches and seizures. We determined that the "State Constitution requires that statements obtained from an accused following a Payton violation must be suppressed unless the taint resulting from the violation has been attenuated" (77 NY2d at 437). The justification for a more protective rule was rooted in the unique protections guaranteed by New York's Right to Counsel Clause, which is "`far more expansive than the Federal counterpart'" (id. at 439, quoting People v Bing, 76 NY2d 331, 339 [1990]).[4] We noted that "[u]nder both Federal and State law, the right to counsel attaches once criminal proceedings have commenced" and, of particular relevance, in New York "criminal proceedings must be instituted before the police can obtain a warrant" because CPL 120.20 requires an accusatory instrument to be filed before an arrest warrant may be issued (People v Harris, 77 NY2d at 439, 440). In this state, therefore, the indelible right to counsel attaches whenever an arrest warrant is issued and the "police may not question a suspect in the absence of an attorney" (id. at 440). Due to this prohibition on interrogation without counsel that arises *241 when a defendant is arrested under the authority of a warrant, we recognized that police in our state may have an incentive "to violate Payton . . . because doing so enables them to circumvent the accused's indelible right to counsel" (id.). Thus, we held that the exclusionary rule applies to statements elicited after a Payton violation in order to deter law enforcement from violating one constitutional protection (unreasonably entering and seizing an accused in the home) for the purpose of circumventing another (the indelible right to counsel).
Here, as in Harris, we are again confronted with the "interplay between the right to counsel rules established by New York law and the State's search and seizure" protections (id.). Relying on Harris, defendant argues that suppression of the lineup evidence is necessary to remove any incentive the police have to violate Payton  namely, the benefit of obtaining a lineup identification in the absence of counsel on behalf of a defendant. The People claim that suppression is unwarranted because, unlike the post-Payton statements at issue in Harris, application of the exclusionary rule to lineups would have little or no deterrent effect on police conduct and the role of counsel at a lineup is less active than the participatory function of counsel during custodial interrogation.
The exclusionary rule "was originally created to deter police unlawfulness by removing the incentive" to disregard the law, but also "serves to insure that the State itself, and not just its police officers, respect the constitutional rights of the accused" (People v Payton, 51 NY2d 169, 175 [1980]; see United States v Leon, 468 US 897, 906 [1984]). Nevertheless, "[t]he heavy sanction exacted by the exclusionary rule" (People v Martinez, 37 NY2d 662, 670 [1975])  "the price paid by society in particular cases for the greater value of deterring future police wrongdoing" (People v Burr, 70 NY2d 354, 362 [1987], cert denied 485 US 989 [1988])  "has never been considered a fundamental right . . . requiring automatic application" every time the police infringe upon federal or state constitutional protections (People v Young, 55 NY2d 419, 425 [1982], cert denied 459 US 848 [1982]).
Whether the rule should apply "depend[s] `upon a balancing of its probable deterrent effect against its detrimental impact upon the truth-finding process'" (id., quoting People v McGrath, 46 NY2d 12, 21 [1978], cert denied 440 US 972 [1979]). But, "it has never been enough to show that evidence must be suppressed simply because it was discovered subsequent to an illegal *242 arrest" (People v Rogers, 52 NY2d 527, 535 [1981], cert denied 454 US 898 [1981]). Rather, the prosecution must have "somehow exploited or benefited from its illegal conduct" such that "there is a connection between the violation of a constitutional right and the derivative evidence" obtained by the police (People v Burr, 70 NY2d at 362; see United States v Crews, 445 US 463, 471 [1980] [exclusionary rule applies to "evidence (that) is in some sense the product of illegal governmental activity"]).
Our Harris rule is premised on the venerable principle that an arrestee has an absolute right  guaranteed by both the Federal and State Constitutions  to remain silent during custodial interrogation, and when the indelible right to counsel has attached, it cannot be waived in the absence of counsel (see e.g. People v Grice, 100 NY2d 318, 320-321 [2003]). But a person lawfully in custody does not have a concomitant right to refuse to participate in a lineup (see People v Hawkins, 55 NY2d 474, 486 n 5 [1982], cert denied 459 US 846 [1982]).[5] Regardless of whether the police arrest a suspect on the street or obtain a warrant and make an arrest in a residence, neither the arrestee nor counsel has the authority to prevent a lineup as long as the police had probable cause for the arrest. While an accused, in consultation with counsel, can decide whether to make a statement to the police, it is the police who alone decide whether a lineup will occur, select the procedure that will be used, determine when and where the identification is held, and choose the other persons who, along with the suspect, will be included in the lineup. Thus, the underlying purpose of the "fruit of the poisonous tree doctrine"  to "preclude[] the use of evidence which would not have been obtained had the illegal search or seizure not occurred"  will not always be served when lineup identifications are at issue (Kamins, New York Search and Seizure, at 13 [14th ed 2004]). Here, allowing evidence of the lineup identifications to be admitted does not put the People "in a better position than [they] would have been in if no illegality had transpired" (Nix v Williams, 467 US 431, 443 [1984]) since the requisite "connection between the violation of a constitutional right and the derivative evidence" is absent (People v Burr, 70 NY2d at 362).
*243 Furthermore, it is well established that there are distinctions between the role of counsel at a custodial interrogation compared to a lineup. Certainly, although "the assistance of counsel is not completely valueless" during a corporeal viewing (People v Hawkins, 55 NY2d at 486), the benefits of counsel's presence at a lineup are more limited than at an interrogation (see People v Hobson, 39 NY2d 479, 485 [1976]; People v Blake, 35 NY2d 331, 337 [1974]). Stated another way,
"[d]uring interrogations, counsel may take an active role on behalf of his client, both in advising a suspect on whether to remain silent and in counseling a suspect on whether to answer particular questions once the right to remain silent has been waived . . . . In contrast, during a lineup counsel plays the relatively passive role of an observer . . . . Counsel may not actively advise his client during the lineup itself" (People v Hawkins, 55 NY2d at 485 [citations omitted]; see also People v Settles, 46 NY2d 154, 165 [1978]).
Another important factor is that the police had probable cause to arrest defendant, unlike in the cases relied on by defendant  People v Dodt (61 NY2d 408 [1984]) and People v Gethers (86 NY2d 159 [1995]). When the police arrest an individual on less than probable cause, the authorities are unreasonably and unconstitutionally exercising custody over the person and may not lawfully force the individual to participate in a lineup (People v Dodt, 61 NY2d at 417). In Payton scenarios, however, the police have probable cause to arrest and, as such, it is only the means of effecting the arrest that are unlawful, not the detention itself.[6] Hence, unlike a lineup arising from an arrest without probable cause, a lineup subsequent to a Payton violation is not an "identification [that] follow[s] directly from the illegal . . . detention of [the] defendant" (People v Dodt, 61 NY2d at 417), nor can it be said that "the police exploited the illegal [entry] in such a way as to establish that it was the [entry] which produced the challenged" lineup identifications (People v Rogers, 52 NY2d at 535). Here, the identifications of defendant were not "the product of" the Payton violation (United States v Crews, 445 US at 471; New York v Harris, 495 US at 19) but of the police having probable cause to believe that defendant was the perpetrator *244 of the robberies based on the photographic identifications by the two victims. Due to the lack of a causal relationship between the Payton violation and the lineup identifications in this case, the lineups were not the "fruit of the poisonous tree."
Moreover, we have acknowledged that "corporeal lineups, properly conducted, generally provide a reliable pretrial identification procedure and are properly admitted unless it is shown that some undue suggestiveness attached to the procedure" (People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]). As an added measure of protection to the accused, "the People have the initial burden of establishing the reasonableness of the police conduct" (People v Jackson, 98 NY2d 555, 559 [2002]), as well as "the lack of any undue suggestiveness in a pretrial identification procedure" (People v Chipp, 75 NY2d at 335). And, if the suggestiveness of a lineup is called into question,
"it is important to remember that . . . the resolution of this issue will not come down to a credibility contest between the accused and the police. . . . [W]ith each lineup identification there will be an eyewitness who can be examined and cross-examined at the Wade hearing and at the trial as to whether any improper conduct was resorted to. In this sense, lineups are fundamentally different from interrogations and thus the protective devices surrounding each may be different" (People v Hawkins, 55 NY2d at 486 n 4 [emphasis in original]).
In addition, law enforcement authorities have an extremely meaningful deterrent not to violate Payton  the Harris rule itself, which renders any uncounseled, unattenuated incriminating statements inadmissible at trial (77 NY2d at 440). Other disincentives exist as well, such as the possibility of a federal civil suit brought under 42 USC § 1983 against the arresting authority premised on the violation of a clearly established Fourth Amendment right (see e.g. Loria v Gorman, 306 F3d 1271, 1283-1284 [2d Cir 2002]; see also Wilson v Layne, 526 US 603, 609-611, 614-615 [1999]). Because the law already incorporates existing protections that sufficiently minimize "incentive[s] to the police to violate" Payton and "the consequences flowing from the police illegality" have a minimal impact on lineup identifications (People v Harris, 77 NY2d at 438), we hold that the State Constitution does not require the suppression of evidence of a lineup identification made after an arrest *245 based on probable cause but in violation of Payton. Based on this determination and because we have concluded that the lineups in this case were not the "fruit of the poisonous tree," we have no reason to address the parties' arguments regarding the attenuation doctrine. Supreme Court therefore properly admitted evidence of the lineup identifications of defendant.
Finally, Supreme Court's determination that the pre-arrest photographic identification procedure was not unduly suggestive, undisturbed by the Appellate Division, is supported by record evidence and is therefore beyond our powers of review (see e.g. People v Jackson, 98 NY2d at 559).
Accordingly, the order of the Appellate Division should be affirmed.
CIPARICK, J. (dissenting).
Because Supreme Court erred as a matter of law when it denied suppression of a lineup identification procedure conducted after an illegal arrest made in violation of Payton v New York (445 US 573 [1980]) and in the absence of counsel, I respectfully dissent.
Defendant was charged with two unrelated robberies, which were tried jointly. Both victims testified as to lineup procedures. One victim made an in-court identification of defendant as the perpetrator. Defendant was convicted of one count of first degree robbery and the jury hung on the charges related to the second robbery.
Prior to trial, defendant moved to suppress evidence of the lineup procedure and any prospective in-court identification by the two complainants. The issues of probable cause, the legality of the arrest, and the suggestiveness of the identification procedures employed by the police  both the photo array and the resulting lineup  were the subject of a combined Dunaway/Payton/Wade hearing conducted by Supreme Court.
The hearing court made certain findings which are undisturbed by the Appellate Division. Supreme Court first found that there existed probable cause to make the arrest because defendant had been identified by both witnesses at separate photographic identification procedures. Second, the court found that the warrantless, nonconsensual entry into defendant's home to effect his arrest constituted an intentional Payton violation. Third, it concluded that neither the photo identification procedures nor the lineup were unduly suggestive. Finally, the court concluded that the lineup identifications were sufficiently attenuated from the illegal arrest and on that basis denied suppression.
*246 It is well settled that under both the Federal and State Constitutions, the right to counsel attaches upon the commencement of criminal proceedings. In New York, however, CPL 120.20 requires an accusatory instrument to be filed before an arrest warrant may issue. Thus the indelible right to counsel attaches when an arrest warrant issues (see People v Harris, 77 NY2d 434, 440 [1991]). Here, the warrantless arrest of defendant resulted in a violation of his state constitutional right to counsel, which is "far more expansive than the Federal counterpart" (People v Bing, 76 NY2d 331, 339 [1990] [citations omitted]). To deter police from circumventing this right to counsel by bypassing the warrant procedure and illegally arresting a defendant in his home, we have traditionally employed the sanction of the exclusionary rule, precluding the admission of evidence acquired as a result of such a violation (see Harris, 77 NY2d at 440). Were this evidence to consist of incriminating statements made by defendant after a Payton violation, the majority would agree under Harris that such statements would be subject to suppression if the taint were not sufficiently attenuated.
Defendant asks us to apply this same rule in the context of identification evidence  here a lineup  procured as a result of an illegal arrest. In effect, defendant requests that we extend our holding in Harris to apply to these circumstances. Harris addressed the suppression of a statement elicited after a Payton violation, and we held that the exclusionary rule applied. Defendant posits that there is no logical reason to conclude that a different result is warranted when the right to counsel at a lineup is thwarted  as here by means of a Payton violation  as opposed to when a similar violation occurs at a custodial interrogation. To adopt any other rule, defendant contends, is inconsistent with the rationale of Harris. I agree.
The rule proposed by the People and adopted by the majority today shifts the emphasis from the illegal warrantless entry into a person's home to a probable cause analysis. It employs the balancing test of deterrent effect against impact upon the truth-finding process and finds in favor of the truth-finding process, creating a distinction  warranting a different result from Harris  "between the role of counsel at a custodial interrogation compared to a lineup" (majority op at 243).
We have characterized the right to counsel as "a matter of singular concern in New York" (Harris, 77 NY2d at 439). It "is a `cherished principle' worthy of the `highest degree of [judicial] *247 vigilance'" (People v Ramos, 99 NY2d 27, 32 [2002] [citations omitted]). Where we have previously determined that counsel is constitutionally required, the relative degree of significance of that role  at a lineup as opposed to during police interrogation  is simply irrelevant.
We have recognized "that the application and scope of the exclusionary rule is ascertained by balancing the foreseeable deterrent effect against the adverse impact of suppression upon the truth-finding process" (People v Drain, 73 NY2d 107, 110 [1989], citing People v Harris, 72 NY2d 614, 621-622 [1988]; People v McGrath, 46 NY2d 12, 21 [1978]; People v Boodle, 47 NY2d 398, 404 [1979]). However, "various constitutional rules limit the means by which government may conduct this search for truth in order to promote other values embraced by the Framers and cherished throughout our Nation's history" (James v Illinois, 493 US 307, 311 [1990]). That the lineup was conducted in violation of defendant's right to counsel necessarily cuts against any potential benefit to the truth-seeking function. The majority's holding balances these values in favor of admissibility. I would weigh them in favor of exclusion.
I would apply the Harris rule here where the placement of defendant in a lineup followed directly from a Fourth Amendment Payton violation and would find the lineup to be a suppressible fruit of a poisonous tree. But for defendant's arrest, there would not have been a lineup. The police had obtained photo identifications of defendant and had knowledge of his address three weeks prior to the unlawful arrest. Nothing prevented them from seeking a warrant. They further violated defendant's rights by placing him in an uncounseled lineup.
Moreover, there is no record support for the suppression court's determination that the lineup was attenuated from the arrest (see People v Conyers, 68 NY2d 982, 984 [1986]). In determining whether a suppressible fruit is sufficiently attenuated from the taint of the illegality to exempt it from the exclusionary rule, courts must consider three factors: the temporal proximity between the arrest and the statement; any intervening factors that may break the chain of events; and the purpose and nature of the illegal police conduct (see Harris, 77 NY2d at 440-441; Conyers, 68 NY2d at 983).
The fact that defendant's photo was on file and had been identified by the witnesses prior to the arrest is irrelevant  serving only to identify defendant as a suspect in the two robberies. *248 Finding that the lineup identification is the result of those previous photographic identifications  establishing probable cause  rather than the Payton violation, fails completely to consider the unlawful arrest and misapprehends the attenuation. The taint from the arrest cannot be attenuated by factors that existed prior to the arrest. Otherwise, suppression of any evidence, including statements, could never be warranted after a Payton violation if the police had probable cause for the arrest. This is clearly not the law, and is in fact the very notion we rejected in Harris. The suppression court here confused an independent source analysis with attenuation. The police had the opportunity to circumvent the attachment of the right to counsel for the purpose of conducting a lineup unencumbered by counsel's participation, and in fact did so. Neither does the passage of the intervening several hours attenuate the taint of illegality. Nothing happened during that time other than the police calling the witnesses to the precinct and rounding up fillers from a local homeless shelter.
In conclusion, I find a causal relationship between the illegal arrest and the lineup identification. I disagree with the People and the majority that a different rule can be applied to lineups as opposed to custodial interrogations when dealing with right to counsel violations, and that the taint of the Payton violation was attenuated. One purpose of the illegal arrest  indeed, perhaps the only purpose  was clearly to place defendant in a lineup. Here, once the right to counsel attached, defendant had the right to counsel's presence at the lineup. Finally, there is no support in the record for Supreme Court's attenuation finding, which was based solely on the previous photo identifications. There was nothing here that cleansed the taint of the warrantless, nonconsensual seizure of defendant from his home. The lineup evidence acquired as a result of this constitutional violation should have been suppressed. As a result, I would reverse defendant's conviction and remit for a new trial to be preceded by an independent source hearing.
Order affirmed.
NOTES
[1] After the victim of the second robbery identified defendant in court and completed her testimony, defendant absconded and was absent for the remainder of the trial. As a result, the victim of the first robbery had to identify defendant from a photograph.
[2] We note, however, that Supreme Court did not ascribe any nefarious intent to the police when they went to defendant's home. Although defendant's mother did not expressly consent to entry by the police, by leaving her front door open she arguably gave them the impression that they did not have to wait outside. Moreover, the police did not barge in unannounced or draw their weapons at any time. Because Supreme Court did not find that the police intended to violate Payton, we respectfully disagree with the dissent that the police purposefully violated defendant's constitutional rights in order to conduct the lineup without counsel (see dissenting op at 248).
[3] The Payton rule precluding warrantless arrests in a suspect's home involves the violation of search and seizure rights under the Fourth Amendment of the United States Constitution (Payton v New York, 445 US at 576). In Harris, this Court framed the issue before it as follows: "whether evidence submitted in support of defendant's conviction, though admissible under Federal standards, should be suppressed under our State constitutional provision prohibiting unlawful searches and seizures" (77 NY2d at 435). The same issue is presented in this case, except here defendant sought suppression of identification evidence rather than statements made during custodial interrogation.
[4] The Right to Counsel Clause, set forth in article I, § 6 of the State Constitution, provides that "[i]n any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions."
[5] The dissent overlooks this important distinction. One of the fundamental concerns in Harris was that a Payton violation could undermine an arrestee's privilege against self-incrimination (see 77 NY2d at 438-439). Significantly, neither the Fifth Amendment nor its state constitutional counterpart are implicated in lineup identifications (see e.g. United States v Wade, 388 US 218, 221-222 [1967]; People v Wilson, 89 NY2d 754, 758 [1997]).
[6] It is for this reason that we disagree with the dissent's characterization of defendant's apprehension as an "illegal arrest" (dissenting op at 245, 246, 248; see People v Harris, 72 NY2d at 625-626 [Titone, J., concurring]).