■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD ROBERSON, Appellant. [672 NYS2d 36] —Judgment,

Supreme Court, New York County (Thomas Galligan, J., at hearings; Bonnie Wittner, J., at jury trial and sentence), rendered December 14, 1994, convicting defendant of murder in the second degree, and sentencing him to a term of 20 years to life, unanimously affirmed.

Defendant's suppression motions were properly denied. Although the police used deceptive tactics to gain entry into the apartment in which defendant was staying, the ruse employed was not so unfair as to undermine the consent of the person who had the requisite authority and control over the premises to permit the entry (*see, People v Horn*, 217 AD2d 406, *lv denied* 86 NY2d 843; *see also, People v Tarsia*, 50 NY2d 1, 11). The record thus supports the hearing court's determination that since the police entry into the apartment was consensual, there was no *Payton* violation (*Payton v New York*, 445 US 573).

The length of defendant's detention did not render his statements involuntary since, under the totality of the circumstances, the People met their burden of proving beyond a reasonable doubt that the statements were knowingly, intelligently and voluntarily made (*see, People v Anderson*, 42 NY2d 35). Defendant was detained with probable cause, there was no hostility displayed by the police, he was not interrogated repeatedly over the course of his detention since much of the time was devoted to locating additional witnesses and preparing for lineups, he was not handcuffed, and he was permitted sufficient sleep, food, drink, and bathroom privileges. As indicated, the delay was due to the ongoing investigation and was not designed to delay arraignment and the assignment of counsel (*see, People v Braxton*, 234 AD2d 50, *lv denied* 89 NY2d 1089; *People v Jones*, 224 AD2d 334, *lv denied* 88 NY2d 937).

The lineups were not unduly suggestive. There is no requirement that a defendant in a lineup be surrounded by people nearly identical in appearance (*People v Chipp*, 75 NY2d 327, *cert denied* 498 US 833) and a review of the photographs taken of the lineups conducted herein demonstrates that any slight differences between defendant's appearance and that of the fillers did not render the lineups suggestive (*see, People v Wilson*, 239 AD2d 264, *lv denied* 90 NY2d 944).

The court properly exercised its discretion by denying defendant's challenges for cause to several prospective jurors since he failed to demonstrate a substantial risk that any alleged predispositions on the part of such jurors would affect their ability to discharge their responsibilities (*see, People v Williams*, 63 NY2d 882). As the trial court found, the hypothetical posed by defense counsel misled the jury and had little to

do with the facts of the case or the law the jurors would be asked to apply. The fact that some of the prospective jurors had some difficulty deciphering what was being asked of them in no way demonstrated that they would be unable to apply the law as instructed (see, People v Hernandez, 222 AD2d 696, lv denied 88 NY2d 879; People v Archer, 210 AD2d 241, lv denied 84 NY2d 1028).

The record does not support defendant's claim of a Brady violation (Brady v Maryland, 373 US 83) based on a photo misidentification made by one of the People's witnesses (see, People v Espinal, 234 AD2d 84, lv denied 89 NY2d 1092). Defendant received pretrial notice of the photo identification procedure in question, permitting effective use of the information through cross-examination and closing argument. He also introduced the photograph itself. Accordingly, there was no reasonable possibility that the outcome of the trial would have been different had defense counsel been in possession of the photograph in question sooner (People v Espinal, supra; see also, People v Brown, 167 AD2d 847).

Defendant was not prejudiced by the People's delay in disclosing the identity of a purportedly exculpatory witness, where within days of stating that another individual had shot the victim, the informant retracted his statement and admitted that he was trying to frame the other individual, demonstrating that the information was so patently unreliable that it could not be credited. The prosecutor disclosed the informant's statement before the trial began. Although defendant claims to have been unable to locate the witness because of the delay in turning over this information, he never availed himself of the opportunity given him by the court to delay the trial to find the witness. Nor was there a reasonable possibility that the outcome of the trial would have been different had defense counsel been in possession of the information sooner. There is no reason to believe that the witness, if located, would have abandoned his recantation and returned to his original version, and even if he had done so, he would have been subjected to effective cross-examination by the People, and his testimony would not have changed the verdict in light of the overwhelming evidence of guilt.

We have considered defendant's remaining contentions and find them to be without merit. Concur—Sullivan, J. P., Rosenberger, Nardelli, Rubin and Williams, JJ.