■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID ROBINSON, Respondent. [779 NYS2d 40]—

Order, Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), entered on or about June 19, 2003, which granted defendant's motion to suppress identification evidence, any testimony regarding the search of defendant and the failure to find narcotics or money on him, and physical evidence consisting of narcotics found during a search of his residence, unanimously reversed, on the law, the motion denied and the matter remitted for further proceedings on the indictment.

The testimony of Detective Rivera, the arresting officer, established that an undercover officer wearing a Kel transmitter had purchased narcotics at the door of a specified apartment in the Bronx, and then reported the purchase and related facts to the arresting officer. The plainclothes officers, concerned that evidence would be quickly destroyed if they appeared at the door, devised a ruse for gaining entry into the apartment. Uniformed officers on patrol nearby knocked on the apartment door, informed the occupants that they were responding to a complaint of noise and requested consent to enter. When the occupants provided consent, the uniformed officers entered, with the plainclothes buy-and-bust team following behind. They observed the individuals described by the undercover, as well as two others, and asked all four individuals to come out into the hallway. Rivera then took defendant and Ms. Webb to the front of the building, where the undercover made a confirmatory identification from his vehicle across the street.

Rivera then secured a search warrant. The search that fol-

lowed revealed 10 bags of crack, buy money, a scale, crack pipes and other drug paraphernalia, as well as a telephone bill with defendant's name on it indicating his residency in the apartment.

Based upon the detective's testimony, whose credibility the court never challenged, we disagree with the motion court's conclusion that the manner of defendant's removal from his apartment required suppression of the subsequent confirmatory identification and physical evidence.

Initially, we conclude that there was no *Payton* violation. Where "the deception was not 'so fundamentally unfair as to deny due process' " the use of a ruse to induce occupants to leave an apartment so as to allow for a warrantless arrest, does not require suppression of the evidence obtained as a result (*see People v Williams*, 222 AD2d 721, 721 [1995], *lv denied* 87 NY2d 978 [1996], quoting *People v Tarsia*, 50 NY2d 1, 11 [1980]). This is also true where a ruse is used to induce an authorized resident to consent to the police officers' entry into the apartment, whereupon a warrantless arrest is effectuated (*see People v Roberson*, 249 AD2d 148 [1998], *lv denied* 92 NY2d 904 [1998]).

The undisputed evidence was that the occupants of the apartment were "asked" to leave the apartment. There was no evidence that they were "ordered" to do so. Importantly, no guns were drawn. There is no blanket prohibition against directing a suspect to come out of his home (*see People v Minley*, 68 NY2d 952 [1986]), in the absence of a showing that the defendant was ordered out at gunpoint (*compare People v Long*, 290 AD2d 332 [2002], *lv denied* 98 NY2d 653 [2002]). The police conduct in the present case, both in entering the apartment and in asking the occupants to step out of it, does not require the suppression of any evidence.

Moreover, even if there had been a *Payton* violation, suppression of the confirmatory identification procedure would not have been required (*see People v Jones*, 2 NY3d 235 [2004]).

We also disagree with the conclusion that Detective Rivera's affidavit relaying the information supplied by the undercover was insufficient in that it failed to establish the undercover officer's reliability. The affidavit established that the affiant officer knew the undercover officer who provided the eyewitness account of the drug sale at issue. Clearly, the two were not merely personal acquaintances; they were working together on this particular arrest. There is no requirement that the affiant state the nature and extent of his working relationship with the undercover officer in order to establish the reliability of the officer who was an eyewitness to the crime. Notably, the fellow offi-

cer rule applies whenever the officer providing the information indicates that he acted "as a result of communication with a [fellow] officer or another police department provided that the police as a whole were in possession of information sufficient to constitute probable cause to make the arrest" (*see People v Horowitz*, 21 NY2d 55, 60 [1967]). Moreover, the concerns underlying the need to establish the reliability of a civilian informant as a basis for issuing a search warrant (*see Aguilar v Texas*, 378 US 108, 114-115 [1964]; *Spinelli v United States*, 393 US 410 [1969]) are not present where the source of the affiant's information is another police officer who was present at the events prompting the arrest (*see People v Petralia*, 62 NY2d 47, 52 n [1984], *cert denied* 469 US 852 [1984]). There is not, and should not be, a requirement that the attesting officer set forth a separate basis for his belief that the undercover officer is reliable, or that he must expressly state that he was working with the undercover on a common investigation.

Issuance of the search warrant was proper based upon Detective Rivera's report conveying the observations of a fellow undercover officer, which established probable cause to believe that drugs, buy money, and related items would be found in the apartment. Accordingly, the motion must be denied and the matter remanded. Concur—Mazzarelli, J.P., Saxe, Sullivan, Friedman and Gonzalez, JJ.