**Marcus MOSBY, Petitioner–Appellant,**

v.

**Daniel SENKOWSKI, Respondent–Appellee.**

**Docket No. 05–1122–pr.**

United States Court of Appeals, Second Circuit.

Argued: April 19, 2006.

Decided: Nov. 30, 2006.

Georgia J. Hinde, New York, NY, for Petitioner–Appellant.

Loretta S. Courtney (Michael C. Green, District Attorney of Monroe County, on the brief), Assistant District Attorney of Monroe County, Rochester, NY, for Respondent–Appellee.

Before: JACOBS, Chief Judge, B.D. PARKER, Circuit Judge, and OBERDORFER, District Judge.*

B.D. PARKER, JR., Circuit Judge.

Marcus Mosby appeals from a judgment of the United States District Court for the Western District of New York (Richard J. Arcara, *Chief Judge*) denying his petition for a writ of habeas corpus. Mosby contends that he was denied his Sixth Amendment right to effective assistance of appellate counsel when, on direct appeal, his counsel failed to raise a suppression issue arising under the Fourth Amendment and the New York State Constitution. The state trial court ruled that Mosby lacked standing to challenge his warrantless arrest because he did not live in the house where he was arrested, and denied his motion to suppress a confession and photo identification that ultimately led to his murder conviction. Because the underlying suppression issue, when considered in accordance with the attenuation analysis of *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), lacks merit, we conclude that appellate counsel's omission did not prejudice Mosby. Consequently, we affirm.

## BACKGROUND

On April 15, 1994, witnesses observed an assailant known only by the nickname "Florida" shoot and kill two men on Bloomingdale Street, in Rochester, New York. Five days later, Rochester police officers conducted an unrelated "buy and bust" operation, in which Mosby sold a $20 bag of crack cocaine to a police informant, with an undercover officer present. The drug deal took place through the window of a house at 46 Costar Street, two miles from the site of the homicides. Four uniformed police officers arrived shortly thereafter, without a warrant for Mosby's arrest. They knocked at the front door of the house, which was answered by Mosby's ten-year-old son. The child informed them that his father was upstairs, sleeping. After four or five attempts to coax him downstairs, the uniformed officers entered the house and took Mosby into custody. The undercover officer then identified Mosby as the person he had observed selling cocaine earlier, and Mosby was placed under arrest.

While Mosby was waiting in a police car outside the house, a passing neighbor, Lanna Pulley, noticed him in the car and asked an officer what was happening with "Florida." According to the arresting officers' report, Ms. Pulley told police that Mosby had been living at 46 Costar for the past two months.

On hearing the nickname "Florida" attributed to Mosby, the arresting officers contacted investigators working on the Bloomingdale Street homicides. Later that evening, the police presented a photo array including Mosby's photo to four different witnesses to the homicides. All four identified Mosby as the shooter. After being read *Miranda* warnings, Mosby declined an attorney, and the police questioned him about the homicides. Mosby

---

* The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

ultimately confessed, and the police prepared a written statement which he reviewed and signed after midnight, on the same night as his arrest. He was subsequently indicted, tried, and convicted on homicide charges.[1]

Prior to trial, Mosby moved to suppress the confession and photo identifications on the ground that his warrantless home arrest violated the Fourth Amendment. Mosby claimed that he had been living at 46 Costar Street for at least two months. The trial court held that Mosby did not have standing to assert a Fourth Amendment claim since he was merely a "casual visitor" with a "transient presence" at 46 Costar and thus had no "legitimate expectation of privacy" there. Accordingly, the court denied Mosby's suppression motion.

At trial, Mosby testified that he shot the two individuals in self-defense. The four eyewitnesses testified, identifying Mosby as the gunman. His confession was admitted during the state's rebuttal case. The jury convicted Mosby on two counts of murder in the second degree, and the court sentenced him to consecutive terms of twenty-five years to life.

On direct appeal, Mosby's attorney did not challenge the adverse suppression ruling. The only issue he raised was that, during cross-examination, the prosecutor improperly impeached Mosby by asking him about details in his trial testimony that did not appear in the statement he had given to the police. The Appellate Division rejected this argument, and the

New York Court of Appeals denied Mosby leave to appeal. *People v. Mosby*, 239 A.D.2d 938, 659 N.Y.S.2d 610, 610–11 (1997); 90 N.Y.2d 942, 664 N.Y.S.2d 760, 687 N.E.2d 657 (1997).

Mosby then filed an application for a writ of *coram nobis* seeking to vacate his conviction on the ground of ineffective assistance of appellate counsel for failure to raise several issues, including the trial court's suppression ruling. The Appellate Division summarily denied the application. *See People v. Mosby*, 676 N.Y.S.2d 390 (1998). Subsequently, Mosby filed a habeas corpus petition asserting the same claim as his *coram nobis* petition, which the district court denied. We granted a certificate of appealability limited to the issue of whether failure to raise the suppression issue on direct appeal constituted ineffective assistance of appellate counsel.

## DISCUSSION

### I. Standard of Review

■ We review a district court's decision to deny a petition for a writ of habeas corpus *de novo*, and its factual conclusions for clear error. *See Gersten v. Senkowski*, 426 F.3d 588, 606 (2d Cir.2005); *Doe v. Menefee*, 391 F.3d 147, 163–64 (2d Cir. 2004). Mosby's petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[2]

We have held that in light of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

---

1. On June 23, 1995, after a separate jury trial, Mosby was convicted on charges of possession of a controlled substance in the third degree, and sale of a controlled substance in the third degree.

2. AEDPA provides, in part:

   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was

adjudicated on the merits in State court proceedings unless the adjudication of that claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States....

28 U.S.C. § 2254(d).

2052, 80 L.Ed.2d 674 (1984), "a Sixth Amendment ineffective assistance of counsel claim necessarily invokes federal law that has been 'clearly established' by the Supreme Court within the meaning of AEDPA." *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001); *see Williams v. Taylor,* 529 U.S. 362, 390–91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (recognizing the *Strickland* test as "clearly established" law for purposes of AEDPA). Although the Appellate Division's summary rejection of Mosby's *coram nobis* petition did not mention Mosby's federal claim, it nonetheless constituted an adjudication on the merits. *See Sellan,* 261 F.3d at 309, 312. Thus, as the district court recognized, we must apply AEDPA's "highly deferential standard" in reviewing Mosby's ineffective assistance of counsel claim. *See Eze v. Senkowski,* 321 F.3d 110, 112 (2d Cir.2003) (acknowledging that "the heavy burden of showing ineffective assistance" is "enhanced by the hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]" (citations omitted)).

To establish ineffective assistance under *Strickland,* Mosby must show (1) that his appellate counsel's "representation fell below an objective standard of reasonableness" and (2) that he was prejudiced by the deficient representation. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Because Mosby's ineffective assistance claim is based on counsel's failure to raise Fourth Amendment issues, he must also show "that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *see also Laaman v. United States,* 973 F.2d 107, 113 (2d Cir.1992).

Under § 2254(d)(1), our inquiry is not whether the Appellate Division's rejection of Mosby's ineffective assistance claim was incorrect, but whether, in light of *Strickland,* it was "objectively unreasonable." *See Sellan,* 261 F.3d at 315; *Williams,* 529 U.S. at 410, 120 S.Ct. 1495 (O'Connor, J. for the Court, Pt. II) ("an *unreasonable* application of federal law is different from an *incorrect* application"). To be "objectively unreasonable," a state court's application of clearly established federal law must involve "[s]ome increment of incorrectness beyond error." *Sellan,* 261 F.3d at 315 (internal quotation marks omitted).

## II. Mosby's Suppression Claim

### A. *Warrantless Arrest*

To determine whether the Fourth Amendment claim underlying Mosby's ineffective assistance argument has merit, we begin with the state trial court's ruling that Mosby did not have standing to challenge his warrantless home arrest. This ruling turned on the factual determination that Mosby did not live at 46 Costar, and thus had no legitimate expectation of privacy there. In *Payton v. New York,* the Supreme Court observed that nowhere "is the zone of privacy more clearly defined than ... [in] an individual's home," and held that, absent exigent circumstances or consent, the police must obtain a warrant before entering a suspect's home to make a routine felony arrest. 445 U.S. 573, 589, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

In cases subsequent to *Payton,* the Supreme Court has held that the zone of Fourth Amendment protection against warrantless arrests, despite probable cause, can extend beyond one's own home: for example, even an overnight guest in

the home of another may have a "legitimate expectation of privacy" sufficient to invoke the protection. *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

In ruling on the suppression motion, the trial court acknowledged that both *Payton* and *Olson* applied, but held that Mosby was a transient presence at 46 Costar, who had no legitimate expectation of privacy there. The trial court relied mainly on the testimony of Ms. Pulley, the neighbor who identified Mosby as "Florida." According to the court, Ms. Pulley "did not say that [Mosby] was an overnight guest at the apartment on the evening before his arrest." The court also noted that there was no evidence that Mosby had keys to the house, received mail there, or paid rent, and that, on the night of his arrest, Mosby told police that he lived at a different address.

The trial court ignored or mischaracterized evidence in the record that supported Mosby's assertion that he had a legitimate expectation of privacy at 46 Costar. The arresting officers' report, for example, included Ms. Pulley's statement that Mosby had been staying at 46 Costar for the past two months. This was confirmed during the suppression hearing, both on cross-examination of an officer and by Ms. Pulley herself. Mosby's aunt also testified that Mosby had been living at 46 Costar Street at the time of the arrest and that he kept his belongings there.

Regardless of whether 46 Costar was his permanent residence, the record before the trial court established that, at the time of his arrest, Mosby had a legitimate expectation of privacy there, and, at the very least, his suppression claim presented a highly compelling issue for appeal. Applying *Payton* and its progeny to facts in the record, we believe that the trial court had no reasonable basis to conclude that Mosby's presence at 46 Costar was more fleeting than even that of an overnight houseguest. *Cf. United States v. Fields*, 113 F.3d 313, 320 (2d Cir.1997) ("[S]ociety recognizes as legitimate the expectation of privacy possessed by an overnight guest—even though he has at best a fleeting connection to his host's home."). Concluding that Mosby had standing, however, is only a preliminary step toward establishing that the Fourth Amendment claim underlying his petition is meritorious. Mosby still must demonstrate that the subsequent confession and photo identification should have been suppressed.

### B. *Attenuation*

■ Evidence obtained from an unlawful search or seizure is generally subject to exclusion as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 484–85, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir.1999). However, "[e]ven in situations where the exclusionary rule is plainly applicable," the Supreme Court has "declined to adopt a 'per se or "but for" rule' that would make inadmissible any evidence ... which somehow came to light through a chain of causation that began with an illegal arrest." *United States v. Ceccolini*, 435 U.S. 268, 276, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) (quoting *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)); *see also Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. 407. The relevant constitutional question is "whether the connection between the lawless conduct of the police and the discovery of the challenged evidence has become so attenuated as to dissipate the taint." *Ceccolini*, 435 U.S. at 273–74, 98 S.Ct. 1054 (internal quotation marks

omitted).[3]

■ The attenuation doctrine allows introduction of evidence obtained after an unlawful arrest when "the causal link" between a Fourth Amendment violation and a subsequent confession, identification, or other form of evidence is "so long or tortuous that suppression of the evidence is unlikely to have the effect of deterring future violations of the same type." *United States v. Singh,* 811 F.2d 758, 767 (2d Cir.1987) (Kearse, J. dissenting). In *Brown v. Illinois,* the Supreme Court enumerated four factors relevant to an attenuation analysis: (1) the administration of *Miranda* warnings; (2) "[t]he temporal proximity of the arrest and the confession"; (3) "the presence of intervening circumstances"; and (4) "particularly, the purpose and flagrancy of the official misconduct." 422 U.S. at 603–04, 95 S.Ct. 2254; *see Kaupp v. Texas,* 538 U.S. 626, 633, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003) (per curiam); *Snype,* 441 F.3d at 134.

As a matter of federal law, Mosby's Fourth Amendment claim would almost certainly fail before even reaching a full attenuation analysis. In *New York v. Harris,* 495 U.S. 14, 21, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), the Supreme Court held that, "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton.*" Such a statement is "not the product of being in unlawful custody. Neither [is] it the fruit of having been arrested in the home rather than someplace else." *Id.* at 19, 110 S.Ct. 1640. As a result, the Court found that it was not necessary to apply the *Brown* factors, since attenuation analysis "is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal government activity.'" *Id.* (citation omitted); *cf. Hudson v. Michigan,* —— U.S. ——, —— – ——, 126 S.Ct. 2159, 2164–65, 165 L.Ed.2d 56 (2006).

Applying this logic here, Mosby's confession at the station house cannot be deemed a product, for Fourth Amendment purposes, of any *Payton* violation that may have occurred.[4] However, ineffective assistance of counsel in violation of the Sixth Amendment is not limited to failures to raise meritorious federal claims. Failure to raise a valid state law claim on appeal may also constitute ineffective assistance, so long as the relevant standards under *Strickland* are met. *See Claudio v. Scully,* 982 F.2d 798, 803 n. 5 (2d Cir.1992); *cf. Sellan,* 261 F.3d at 306.

The Supreme Court's decision in *New York v. Harris ("Harris II")* reversed a

---

**3.** Because we ultimately decide this case on attenuation grounds, we do not reach the issue of whether the warrantless arrest was justified because of consent or exigent circumstances, *see Georgia v. Randolph,* —— U.S. ——, ——, 126 S.Ct. 1515, 1518, 164 L.Ed.2d 208 (2006) (consent); *Fields,* 113 F.3d at 322–23 (exigent circumstances). We also do not consider whether the confession and photo identifications need not have been suppressed based on the independent source and inevitable discovery doctrines. *See United States v. Singh,* 811 F.2d 758, 767 (2d Cir.1987) (Kearse, J. dissenting).

**4.** Although *Harris II* involved a confession, the Court's holding has been applied to other forms of evidence as well, including identifications. *See United States v. Villa–Velazquez,* 282 F.3d 553, 556 (8th Cir.2002); *Martin v. Mitchell,* 280 F.3d 594, 607 (6th Cir.2002); *see also United States v. Crawford,* 372 F.3d 1048, 1056 (9th Cir.2004) ("After [*Harris II*], the presence of probable cause to arrest has proved dispositive when deciding whether the exclusionary rule applies to evidence or statements obtained after the defendant is placed in custody.").

prior decision of the New York Court of Appeals, *People v. Harris,* 72 N.Y.2d 614, 620–21, 536 N.Y.S.2d 1, 532 N.E.2d 1229 (1988) (*"Harris I"*), on federal constitutional grounds—holding that the evidence at issue in the case need not be suppressed. The Supreme Court remanded the case to the Court of Appeals, which reinstated the prior outcome. *People v. Harris,* 77 N.Y.2d 434, 568 N.Y.S.2d 702, 570 N.E.2d 1051 (1991) (*"Harris III"*). *Harris I* had applied *Brown* to a custodial confession by a suspect who had been arrested in violation of *Payton,* and found that the confession was not sufficiently attenuated from the illegal arrest. Despite the Supreme Court's disposition of the Fourth Amendment issue, the Court of Appeals on remand applied the New York State Constitution's right to counsel to find that custodial statements obtained following an arrest in violation of *Payton* "must be suppressed unless the taint resulting from the violation has been attenuated." *Harris III,* 77 N.Y.2d at 437, 568 N.Y.S.2d 702, 570 N.E.2d 1051. Re-applying the *Brown* attenuation analysis it had utilized in *Harris I,* the court concluded that "the causal connection between the illegal arrest and defendant's statement in the police station was not sufficiently attenuated from the *Payton* wrong because of the temporal proximity of the arrest and the statement, the absence of intervening circumstances and the purpose and flagrancy of the police misconduct." *Id.* at 440–41, 568 N.Y.S.2d 702, 570 N.E.2d 1051.

Thus, while Mosby's Fourth Amendment suppression claim appears to lack merit under *Harris II,* on direct appeal he might have been able to demonstrate that his confession and the photo identifications should have been suppressed under New York state law on the strength of *Harris III.*

### 1. Mosby's Confession

Indeed, both parties concede that *Harris III* governs our analysis of Mosby's confession. Accordingly, to evaluate attenuation in the context of a custodial confession following a warrantless home arrest, we apply the *Brown* factors. *See supra; Harris III,* 77 N.Y.2d at 434. All four factors—administration of *Miranda* warnings, temporal proximity of the arrest and statement, intervening circumstances, and the purpose and flagrancy of the official misconduct—suggest that the link between Mosby's arrest and confession was sufficiently attenuated so as not to require suppression.

The police did not begin questioning Mosby about the Bloomingdale Street homicides until approximately five hours after his arrest and following *Miranda* warnings. New York courts have found custodial statements given after *Miranda* warnings and similar passages of time sufficiently attenuated to break the causal chain from an unlawful arrest. *See, e.g., People v. Divine,* 21 A.D.3d 767, 800 N.Y.S.2d 545, 545 (2005) (four hours); *People v. Santos,* 3 A.D.3d 317, 770 N.Y.S.2d 314, 314 (2004) (six hours); *People v. Russell,* 269 A.D.2d 771, 704 N.Y.S.2d 395, 395–96 (2000) (five hours); *People v. Folks,* 246 A.D.2d 433, 668 N.Y.S.2d 179, 180 (1998) (seven or eight hours).

In addition, there were significant intervening circumstances between the warrantless arrest and the confession—most notably, Ms. Pulley's spontaneous appearance and reference to Mosby as "Florida." While his arrest might, in some sense, have been a but-for cause of his encounter with Ms. Pulley outside the house, this is not sufficient to justify exclusion. *See Hudson,* 126 S.Ct. at 2164 ("[B]ut-for causality is only a necessary, not a sufficient, condition for suppression."); *Ceccolini,* 435 U.S. at 274, 98 S.Ct. 1054. Ms. Pulley's

appearance, in other respects, was entirely unrelated to Mosby's warrantless arrest, and was not a "product" of it for Fourth Amendment purposes. *Cf. Harris II,* 495 U.S. at 19, 110 S.Ct. 1640. Moreover, her unexpected statement connected Mosby to an entirely different crime from the one that prompted his arrest. *See* 6 WAYNE R. LAFAVE, ET AL., FOURTH AMENDMENT: SEARCH & SEIZURE, § 11.4 ("[O]ne kind of 'intervening circumstances' is the post-arrest discovery of information connecting defendant with another crime.").

The final *Brown* factor, flagrancy and purpose of police conduct, reflects the policies of deterrence and judicial integrity underlying the exclusionary rule. *See Dunaway v. New York,* 442 U.S. 200, 217, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ("When there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but also use of the evidence is more likely to compromise the integrity of the courts."). In *Brown,* the Supreme Court found that the arrest at issue, "both in design and execution, was investigatory," and that the police had embarked on an "expedition for evidence in the hope that something might turn up." 422 U.S. at 605, 95 S.Ct. 2254. The Court concluded that the illegal arrest therefore "had a quality of purposefulness" that tilted the balance toward exclusion of the defendant's subsequent confession. *Id.; see also Dunaway,* 442 U.S. at 218, 99 S.Ct. 2248. Here, the police could not have been trying to arrest Mosby for the purpose of linking him to the Bloomingdale Street homicides, since they had no idea he was involved in those homicides until after he was arrested and moved outside the house. The arrest, moreover, cannot be characterized as "investigatory," since the police had already witnessed Mosby's involvement in a drug transaction.

Suppressing Mosby's confession would be unlikely to deter future police misconduct, since the police—at the time they entered 46 Costar to make a routine drug arrest—could not have anticipated the fortuitous chain of events that ultimately connected Mosby to the homicides. This is especially true because the catalyst for those events was the appearance of Ms. Pulley and her spontaneous comment to the police. *Cf. Ceccolini,* 435 U.S. at 276, 98 S.Ct. 1054 ("The greater the willingness of the witness to freely testify, the greater the likelihood that he or she will be discovered by legal means and, concomitantly, the smaller the incentive to conduct an illegal search to discover the witness."). In addition, the social costs of suppressing Mosby's voluntary confession to two homicides would have been considerable. *See Hudson,* 126 S.Ct. at 2165 ("Quite apart from the requirement of unattenuated causation, the exclusionary rule has never been applied except where its deterrence benefits outweigh its substantial social costs.") (internal quotation marks omitted). For these reasons we conclude that the New York courts would in all probability have found that Mosby's custodial confession was too attenuated from his warrantless arrest to require suppression. Consequently, the failure to raise this issue did not prejudice Mosby within the meaning of *Strickland.*

### 2. Identification Evidence

The New York Court of Appeals has held that the New York State Constitution "does not require the suppression of evidence of a lineup identification made after an arrest based on probable cause but in violation of *Payton.*" *People v. Jones,* 2 N.Y.3d 235, 244–45, 778 N.Y.S.2d 133, 810 N.E.2d 415 (2004). The *Jones* court distinguished *Harris III,* emphasizing the difference "between the role of counsel at a

custodial interrogation compared to a line-up," and noting that "the identifications of defendant were not the 'product of' the *Payton* violation, but of the police having probable cause to believe that defendant was the perpetrator." *Id.* at 243–44, 778 N.Y.S.2d 133, 810 N.E.2d 415 (internal citation omitted).

■ Both parties agree that *Jones* controls, or at least is highly relevant to our analysis of whether the photo identifications should have been suppressed. Although *Jones* was decided after Mosby's direct appeal, the Supreme Court has held that current law should be applied retroactively for purposes of determining whether a party has demonstrated prejudice under *Strickland's* second prong. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). *Compare United States v. Gaskin*, 364 F.3d 438, 469 (2d Cir.2004) ("In evaluating the performance prong of an ineffective assistance claim, we do not view the challenged conduct through the 'distorting' lens of hindsight but 'from counsel's perspective at the time.'" (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052)), *with Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir.1994) ("The outcome determination, unlike the performance determination, may be made with the benefit of hindsight." (citing *Lockhart*, 506 U.S. at 372–73, 113 S.Ct. 838)).

Here the trial court found that the police had probable cause to arrest Mosby for selling drugs. The photo array later presented to witnesses of the Bloomingdale Street homicides was not prompted by the officers' warrantless arrest of Mosby at 46 Costar, or by anything they discovered while inside the house, but rather by Ms. Pulley's identification of Mosby as "Florida" when she saw him on the street. Here, as in *Jones*, application of the exclusionary rule is not warranted, since "the requisite connection between the violation of a constitutional right and the derivative evidence is absent." 2 N.Y.3d at 242, 778 N.Y.S.2d 133, 810 N.E.2d 415 (internal quotation marks omitted).

III. Ineffective Assistance of Counsel

■ The district court did not explicitly endorse the trial court's conclusion that Mosby lacked standing to assert a Fourth Amendment claim, but emphasized the trial court's finding that the police had probable cause to arrest Mosby. The district court held that because Mosby could not demonstrate both that it was objectively unreasonable for his appellate counsel not to pursue the suppression issue, and that, had he done so, there was a reasonable probability that the appeal would have succeeded, he failed to establish ineffective assistance of counsel under *Strickland*. We agree.

In light of *Harris II*, Mosby cannot maintain that the Fourth Amendment claim underlying his petition is meritorious, and his ineffective assistance claim on that issue fails accordingly. *See Kimmelman*, 477 U.S. at 375, 106 S.Ct. 2574. AEDPA, moreover, requires a high level of deference to the prior state court adjudication of Mosby's claim. Based on our analysis of the Fourth Amendment issue, we cannot conclude that the Appellate Division's finding was "objectively unreasonable." 28 U.S.C. § 2254(d)(1).

New York law affords Mosby somewhat more latitude in claiming that his confession following an arrest in violation of *Payton* should have been suppressed. *See generally Harris III*. However, due to intervening events and other surrounding circumstances, Mosby's voluntary confession was attenuated from his warrantless arrest. Thus, even if he could show that appellate counsel's failure to raise the suppression claim "fell below an objective standard of reasonableness," Mosby can-

not show that he was prejudiced by the omission.

Finally, any state law claim Mosby's counsel might have raised on direct appeal regarding suppression of the photo identification evidence is governed by the New York Court of Appeals' decision in *Jones*. Because the trial court's denial of Mosby's motion to suppress that evidence did not deprive him of any right under current New York law, his appellate counsel's failure to raise the issue did not render the proceeding unreliable or unfair. *See Lockhart*, 506 U.S. at 372, 113 S.Ct. 838. As a result, Mosby cannot establish prejudice under the second prong of *Strickland*. *See id.*

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Mosby's petition for a writ of habeas corpus.