05-0731-pr
McKethan v. Mantello

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2007

(Argued:  February 21, 2008                    Decided:  April 9, 2008)

Docket No. 05-0731-pr

WILLIAM McKETHAN,

*Petitioner-Appellant*,

v.

DOMINIC MANTELLO,

*Respondent-Appellee*.

Before: KEARSE, CALABRESI, and SACK, *Circuit Judges*.

Appeal from a judgment entered in the United States District Court for the Eastern District of New York (Weinstein, *J.*), denying Petitioner-Appellant's petition for habeas corpus.

Affirmed.

> DONNA R. NEWMAN, New York, N.Y.,*for Petitioner-Appellant*.
>
> EMIL BRICKER, Assistant District Attorney, *for* Richard A. Brown, District Attorney, Queens County (John M. Castellano, *on the brief*), Kew Gardens, N.Y. *for Respondent-Appellee*.

PER CURIAM:

Petitioner-Appellant William McKethan appeals from a decision of the United States District Court for the Eastern District of New York (Weinstein, *J.*) denying his petition for habeas corpus. We find that the New York courts did not unreasonably apply clearly established Supreme Court precedent in rejecting McKethan's claim that his exclusion from the courtroom during a pre-trial conference violated his constitutional rights. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

On November 16, 1991, at approximately 9:15 p.m., a man named Anthony Mabry was murdered in Far Rockaway, Queens. Eyewitnesses later testified they saw William McKethan chase Mabry and shoot him three or four times. McKethan, according to these witnesses, then stood over Mabry, punching and kicking him, before seizing Mabry's distinctive green, brown, and burgundy suede coat, and fleeing. Mabry later died from his wounds. The next day, McKethan was arrested outside Port Authority Bus Terminal, wearing the dead man's coat. The coat bore a bloodstained bullet-hole. Subsequently, McKethan was charged in state court with Murder in the Second Degree, Robbery in the First Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of Stolen Property in the Fifth Degree.

Before the trial, McKethan moved to suppress the identification evidence of two eyewitnesses, Vance Jones (the victim's half-brother) and Daniel McClendon, each of whom had identified McKethan as the culprit from a single photograph, rather than from a photo-array. The trial court conducted a suppression hearing. Opposing the motion, the state presented the testimonial evidence of police officers involved in the investigation and arrest. One officer, Detective Brian McNulty, testified that Jones and McLendon each told police that they had known McKethan for

several years. The state rested its case on the suppression issue on December 16, 1992. McKethan's lawyer, a Mr. Cohen, then obtained an adjournment, stating: "I would like to reserve my opportunity to argue until I have the minutes and can discuss it with Mr. McKethan."

At the next court proceeding, on February 26, 1993, Cohen asked for another adjournment "so that I could speak to Mr. McKethan as to whether he intends to possibly testify at this hearing." This statement surprised Judge Hanophy, who thought both sides had rested. The judge nevertheless acquiesced, saying: "If you want to, I will not at this time say you can't put your client on the stand. I hate it to deprive a complainant, at any time, of taking a stand. You are going to make up your mind. When I say you I mean your client."

On March 19, 1993, Cohen appeared in court and asked to be relieved as McKethan's counsel. The judge allowed Cohen to withdraw, and told McKethan that once he got a new lawyer, he was "going to trial." McKethan protested that he had not rested on the suppression motion. The judge refused to listen to McKethan, saying "You're going to go through an attorney. I won't talk to you after this appearance. . . . You wait until you get your new lawyer and then you talk to him." McKethan, however, persisted, and Judge Hanophy had him removed from the courtroom.

On March 31, 1993, McKethan's new lawyer, Stephen Siegel, appeared in court. The court noted that McKethan had met with Siegel, and stated that the parties had agreed to adjourn once more to April 20. Judge Hanophy then sought to determine the next stage in the proceedings; the court clerk, attempting to assist the judge, stated that "both sides rested" on December 16. Siegel, however, told the court that he had learned from McKethan that the evidentiary part of the suppression hearing had not yet ended. Seeking to clear up the confusion, Judge Hanophy proceeded to read from the minutes of the December 16 proceedings, where Cohen had said that he wanted an adjournment for the purposes of *argument*. McKethan then repeatedly sought to interrupt despite

the court's instruction that his position be stated only by counsel, and Judge Hanophy again ordered him removed from the courtroom, saying "I'm trying to read here and he's talking."

With McKethan gone, Judge Hanophy continued to review the December 16 minutes. Unfortunately, the judge seems not to have had the transcript of the February 26 hearing before him. He concluded that the evidentiary phase of the hearing had ended, overlooking his February 26 statement that he would allow McKethan to take the stand: "So, apparently, there was argument to be made. Both sides rested but there was no argument made. On the 20th, give me argument." Siegel replied: "We'll argue on the 20th and you decide."

On April 20, 1993, Siegel submitted a series of applications to the court. Siegel did not, however, seek to introduce evidence in support of the suppression motion or state that McKethan wished to testify. Instead, he commenced argument on the motion's merits. He contended that the use of a single photograph to identify McKethan was improperly suggestive, because Jones and McLendon did not know McKethan sufficiently well. McKethan, Siegel said, "had not lived in the community for quite sometime and I believe had moved out before he was 15." But Judge Hanophy accepted McNulty's testimony, and found that the photo IDs by McLendon and Jones were not subject to suppression "for any possible suggestiveness, since the witnesses had been acquainted with defendant for several years prior to the indictment."

At trial, Jones and McLendon testified that McKethan was the killer. On June 15, 1993, the jury convicted McKethan on all counts. Judge Hanophy sentenced McKethan to twenty-five years to life in prison for the murder.

McKethan appealed his conviction to the New York Appellate Division with the aid of counsel. In addition, McKethan filed a supplemental *pro se* brief, in which he argued, among many other things, that the trial court deprived him of his constitutional rights to be present and to testify

at the suppression hearing when it removed him from the courtroom on March 31, 1993. The Appellate Division denied the appeal, holding that "[t]he defendant's . . . contentions in his supplemental *pro se* brief are either without merit or involve matters outside the record which cannot be considered on direct appeal from the judgment of conviction." *People v. McKethan*, 640 N.Y.S.2d 570, 571 (App. Div. 1996). Leave to bring a further appeal to the New York Court of Appeals was denied. *People v. McKethan*, 88 N.Y.2d 938 (1996). In addition, McKethan filed several post-judgment motions challenging his conviction, and sought a writ of error *coram nobis*, alleging manifold errors in the trial, including the March 31, 1993 exclusion. These motions, too, were denied by the New York courts.

On October 4, 1999, McKethan filed a petition for habeas corpus in the Eastern District of New York. Judge Weinstein initially dismissed the petition, after deciding that it contained unexhausted claims. This Court reversed the dismissal, finding that "[a]ll the issues raised in McKethan's petition are exhausted because they were either resolved by the New York courts or are now procedurally barred for not having been asserted in a timely fashion." *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002).

On remand, Judge Weinstein denied the petition on the merits. The district court, however, granted a certificate of appealability "on the issue of petitioner's exclusion from the courtroom on March 31, 1993 and any attendant consequences preventing him from testifying at the pretrial hearing." Dist. Ct. Mem. at 58. McKethan's motion to expand the scope of the certificate of appealability was denied by this Court. This appeal followed.

**DISCUSSION**

We review *de novo* the district court's decision to deny a petition for habeas corpus, but review its factual determinations for clear error. *Mosby v. Senkowski*, 470 F.3d 515, 518 (2d Cir. 2006).

In the case before us, the New York Appellate Division declared that the various claims in petitioner's supplemental *pro se* brief, including the claims at issue on this appeal, were "either without merit or involve[d] matters outside the record which cannot be considered on direct appeal from the judgment of conviction." *McKethan*, 640 N.Y.S.2d at 571. In such circumstances, we assume, in the absence of any indication to the contrary, that the state court rejected the claims on their merits, rather than on the basis of a state law procedural ground. *Fama v. Com'r of Correctional Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000).

Petitioner argues that the hearing court's March 31, 1993 decision to remove him from the courtroom violated his constitutional rights. He asserts that the exclusion deprived him of the ability to inform his new lawyer that the defense had not rested. McKethan claims that, given the opportunity, he would have testified that Jones and McLendon had not in fact known him for several years. Such testimony, McKethan maintains, would have established that the photo-show was improper, and that the identification evidence should have been suppressed. Based on these assertions, McKethan contends that the March 31 exclusion deprived him of (1) his right to testify, *see Rock v. Arkansas*, 483 U.S. 44, 49 (1987), and his right to put forth a defense, *see Crane v. Kentucky,* 476 U.S. 683, 690 (1986); (2) his right to be present at a material stage of the criminal proceedings, *see Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); and (3) his right to receive the effective assistance of counsel, *see Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004).

We find no violation any of the three claimed constitutional rights relied upon by McKethan. The reason is essentially the same as to each: The court's statement at the March 31 conference that

McKethan had rested was not a ruling. Near the outset of the March 31 conference, the court clerk stated that testimony was received in December and "[b]oth sides rested." The only decision made by the court at the March 31 conference in the absence of McKethan was the decision to adjourn the proceedings until April 20. The court's statement on March 31 that the defense had rested was not a ruling but rather an interpretation of the status of the proceedings, an interpretation that was in fact erroneous because the court was reading from an incomplete record that did not include the court's February 26 ruling that McKethan retained the right to decide whether or not to testify. For twenty days, Judge Hanophy's mistake remained readily remediable by the simple expedient of bringing the error to the attention of the court. McKethan never took this step. Instead, on April 20, his counsel proceeded to argue the merits of the suppression hearing, without seeking to present evidence.

McKethan, therefore, was not deprived of his rights to testify and/or present other evidence by his short absence from the courtroom. He retained the opportunity to assert those rights after the hearing. By the same token, McKethan's "right to be present at any stage of the criminal proceeding that is critical to its outcome," *Stincer*, 482 U.S. at 745, was not infringed by the court's decision to remove him on March 31. The proceeding in progress was a conference to determine the status of the prosecution and the steps necessary for its completion. Although McKethan was present for the start of the conference because the court wanted to ensure that he met his new attorney, a status conference – normally held among the court and counsel – is not typically a "stage of the criminal proceeding that is critical to its outcome" such that the defendant has a constitutional right to attend. *See also id.* (criminal defendant has a right to be present "to the extent that a fair and just hearing would be thwarted by his absence" (internal quotation marks omitted)). Because McKethan retained the opportunity to raise his desire to testify, the few minutes when he was excluded from the status conference were not critical to the outcome of the case. For the same reason, McKethan was not

denied his constitutional right to the effective assistance of counsel, which similarly extends only to critical stages of the proceedings. *See Tovar*, 541 U.S. at 80-81 ("The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.")

Foreseeing this objection to his constitutional claims, McKethan argues that, in light of his prior exclusions from the courtroom, he was "too intimidated to subsequently speak up in court." Pet'r Br. at 20. This contention, too, is unavailing. Though the court stated that it did not want to hear directly from McKethan, Judge Hanophy made it abundantly clear that he would accept any and all motions from McKethan through his lawyer. At the April 20 hearing, moreover, McKethan's lawyer did make various motions to the court, but none of these sought to correct the prior error or to put McKethan on the stand.[1]

In these circumstances, the trial court's March 31, 1993 decision to remove McKethan from the courtroom did not violate any of his constitutional rights.

## CONCLUSION

The judgment of the district court is **AFFIRMED**.

---

[1] McKethan does not claim that his lawyer's failure to raise the issue subsequent to the March 31 hearing constituted ineffective assistance of counsel. Such an argument would, in any case, not be covered by the certificate of appealability.