07-0592-pr
*Dunlap v. Burge*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued:  February 5, 2009                      Decided:  September 28, 2009)

Docket No. 07-0592-pr

-----------------------------------------------

RAHEEM DUNLAP,

*Petitioner-Appellant*,

-- v. --

SUPERINTENDENT J. W. BURGE,

*Respondent-Appellee*.

-----------------------------------------------

Before: SACK and PARKER, *Circuit Judges*, and STANCEU, *Judge*.[*]

      Petitioner-appellant appeals from an order of the United States District Court for the

Southern District of New York (Stephen C. Robinson, *J.*) denying his petition for a writ of

habeas corpus following his conviction in the Supreme Court, Westchester County, State of New

York (James R. Cowhey, *J.*, sitting with a jury), of assault in the first degree (two counts),

---

      [*] The Honorable Timothy C. Stanceu, *Judge*, United States Court of International Trade, sitting by designation.

attempted robbery in the second degree (two counts), criminal use of a firearm in the first degree, assault in the second degree (two counts), and reckless endangerment in the first degree.

AFFIRMED.

SALLY WASSERMAN, New York, New York, *for Petitioner-Appellant*.

JOHN SERGI (Janet DiFiore, Joseph M. Latino, and Anthony J. Servino, *on the brief*), Westchester County District Attorney's Office, White Plains, New York, *for Respondent-Appellee*.

STANCEU, *Judge*:

Petitioner-appellant Raheem Dunlap, proceeding *pro se*, filed a petition for a writ of habeas corpus, contending that unconstitutionally suggestive pretrial identification procedures were used to obtain his conviction in New York State Supreme Court. He appeals from the denial of his petition by the United States District Court for the Southern District of New York (Robinson, *J.*).

In ruling on the petition, the district court concluded that the identification procedures at issue were unduly suggestive and that no independent source existed for the trial identifications by two witnesses who previously were shown photo arrays by the police. The district court concluded that the state court erred in failing to suppress the identification testimony but held that the failure to do so was harmless error because additional evidence was sufficient to support the conviction.

We conclude that the district court erred in failing to accord the deference required by 28 U.S.C. § 2254(d) to the state court's evaluation of the pretrial identification procedures. Because we conclude that the state court's resolution of this issue was not reached in

contravention of, or pursuant to an unreasonable application of, clearly established federal law, we affirm the judgment but on an alternate ground from that on which the district court relied.

## I.  BACKGROUND

On August 27, 2001, in Mount Vernon, New York, a masked passenger in a taxicab driven by Rafael Bridge attempted to rob Bridge at gunpoint and repeatedly assaulted him.  Both Bridge and Joan Grant, the only other passenger in the cab, had noticed the perpetrator on that clear and sunny day, when the perpetrator, then unmasked, was standing on a corner nearby. Bridge had seen the man walk up to the cab, lean his face down to the open front passenger-side window to ask for a ride, and walk around the front of the cab to enter the taxi from the rear driver's side.  Bridge had another opportunity to observe the perpetrator, still unmasked, when the perpetrator paid his fare and received his change from Bridge.  Grant had observed the unmasked man seating himself next to her in the back of the cab, in the course of exchanging hellos, and again when the man pulled out a mask and gun.  The assault the masked man committed caused Bridge to lose consciousness, after which the cab collided with a light pole. Locksey Manning, who was standing outside his home at the time of the collision, saw an unmasked man climb out of the cab through the broken windshield and leave the scene.

Both Bridge and Grant were injured in the collision and hospitalized for treatment. Police visited them in the hospital on the day of the collision and asked each of them, independently, for a description of the perpetrator and to attempt to identify the assailant from an array of six photographs that included a photograph of Raheem Dunlap.  Bridge described the perpetrator to the police as a light-complexioned African-American man who was approximately five feet, nine inches tall and had a slim build.  Bridge also described the perpetrator's clothing.

3

Bridge selected a photograph of a man who was not Dunlap but indicated that he was not certain of his identification. He also informed the police that he could not see the photographs clearly because his vision was blurred as a result of the injuries he had sustained. Bridge, who was hospitalized for three days, suffered an orbital fracture near his right eye, which was swollen shut at the time he viewed the photo array.

On that same day, Grant, who was bleeding, crying, and hysterical when being questioned by police in the hospital, did not provide a description but identified a photograph of Dunlap from a photo array that was a duplicate of that shown to Bridge. She, too, indicated that she was not certain, and she asked to see another photograph.

On August 31, 2001, after Bridge was released from the hospital and four days after Bridge had viewed the first photo array, police showed Bridge a second photo array that included a different photograph of Dunlap than the one included in the first array. The new photograph appeared in a different position in the array than the one occupied by Dunlap's photograph in the first array. Other than Raheem Dunlap, none of the other persons portrayed, including the person that Bridge had originally identified tentatively as the perpetrator, was portrayed in the second photo array. This time, Bridge identified Dunlap's photograph as that of the perpetrator.

After her release from the hospital, Grant provided police a description of the assailant, stating that he was a young African-American man with a light complexion. On September 9, 2001, thirteen days after Grant viewed the first photo array, police presented Grant with a second photo array that included a photograph of Dunlap that was not the same photograph used in the first array Grant had seen, and that was placed in a different position than Dunlap's photograph

4

had occupied in the first array. From the second array, Grant identified Dunlap, who was the only person who also had been pictured in the first array.

On October 26, 2001, Dunlap was charged with assault in the first degree (two counts), attempted robbery in the second degree (two counts), criminal use of a firearm in the first degree, assault in the second degree (two counts), and reckless endangerment in the first degree. Pretrial hearings on Dunlap's motion to suppress identification testimony were held before the trial court on May 15 and 16, 2002. The trial court denied the motion to suppress, holding that the pretrial identification procedures were "not in any degree whatsoever suggestive and did not deny defendant any due process of law." *People v. Dunlap*, No. 01-1177, slip op. at 3-4 (N.Y. Sup. Ct. May 16, 2002). The trial court found that the photographs used in each of the photo arrays were of "young, black males . . . with comparatively light skin complexion," *id.* at 1, and that "[t]he photo participants were sufficiently similar in appearance to the defendant so that no characteristic would have influenced the viewer to choose the defendant." *Id.* at 1-2.

At trial, Bridge and Grant identified Dunlap as the perpetrator. Locksey Manning, when called as a defense witness, testified that he could not identify Dunlap as the person whom he had observed emerge from the cab and leave the scene. However, one day after witnessing the collision, Manning, upon being shown a six-photo array and being asked for his "best guess" as to the identity of the man whom he had seen climb out of the cab, had selected a photo of Dunlap. His signature beneath this photo array was entered into evidence on cross-examination. The trial concluded on May 30, 2002, and a jury found Dunlap guilty on all counts.

On appeal, the conviction was affirmed by the Appellate Division, Second Department, which held that "[t]wo separate showings of a suspect's picture in successive photographic arrays

5

are not per se impermissibly suggestive." *People v. Dunlap*, 780 N.Y.S.2d 171, 172 (N.Y. App. Div. 2004). The Appellate Division concluded that "the potential for irreparable misidentification such as where a witness repeatedly views the same photograph of a defendant until a positive identification results did not exist," *id.*, and that, "[u]nder the totality of the circumstances surrounding the pretrial identification . . . , the photographic arrays were not unduly suggestive." *Id.* at 172-73. The New York Court of Appeals denied petitioner's application for leave to appeal. *People v. Dunlap*, 786 N.Y.S.2d 819 (N.Y. 2004).

On July 22, 2005, Dunlap filed a petition for a writ of habeas corpus, contending that the pre-trial identification procedures were unduly suggestive and violated due process. Upon referral of the petition, Magistrate Judge George A. Yanthis issued a Report and Recommendation concluding that the petition should be denied. The Report and Recommendation rejected the state court's conclusion that the pretrial identification procedures were not unduly suggestive, but it concluded, notwithstanding the deficiencies it found to exist in the identification procedures, that Bridge's identification was independently reliable. Grant's identification of Dunlap was found not to be independently reliable, but the Report and Recommendation concluded that the error was harmless due to the strength of the other evidence against Dunlap.

Both sides filed objections to Judge Yanthis's Report and Recommendation. The district court adopted the Report and Recommendation in large part but concluded that Bridge's identification was not independently reliable. *Dunlap v. Burge*, No. 05 Civ. 7054, slip op. at 12-13 (S.D.N.Y. Sept. 29, 2006). The court found the errors in admitting Bridge's and Grant's identifications to be harmless in light of the other evidence supporting the conviction. *Id.*

6

at 14-16. This evidence included Manning's identification of Dunlap from a photo array, a black mask recovered from Dunlap's residence, a key recovered from the back of the taxicab that unlocked the front door of Dunlap's residence, and wounds on Dunlap's face that were consistent with those that would have been sustained in a vehicle collision. *Id.* at 15.

## II. DISCUSSION

We review *de novo* a district court's denial of a petition for a writ of habeas corpus. *Mosby v. Senkowski*, 470 F.3d 515, 518 (2d Cir. 2006). A federal court's grant or denial of a state prisoner's habeas petition is governed by 28 U.S.C. § 2254(d) (2006), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1219 (1996) ("AEDPA").[1] Habeas relief is available under the first ground provided in § 2254(d) only if the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." *Id.* § 2254(d)(1). The Supreme Court has stated with respect to § 2254(d)(1) that "a decision by a state court is 'contrary to' our clearly established law if it 'applies a rule that

---

[1] As amended by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

7

contradicts the governing law set forth in our cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The Supreme Court also has instructed that a decision involves an unreasonable application of federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court further has instructed that "[f]or purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado* 541 U.S. 652, 660-61 (2004) (quoting *Williams*, 529 U.S. at 412).

Habeas corpus relief is available under the alternate ground in § 2254(d) only if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Dunlap does not dispute the factual findings underlying his conviction, and the due process question arising from the state court's refusal to exclude eyewitness testimony is a question of law. Therefore, Dunlap raises no factual issue on which his petition could qualify for relief under § 2254(d)(2).

With respect to § 2254(d)(1), we conclude that the state court's resolution of the issue raised by Dunlap's petition was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by Supreme Court precedent. In *Simmons v. United States*, 390 U.S. 377 (1968), the Supreme Court considered the question of impermissible suggestiveness in successive pretrial photo arrays in the context of a conviction based on

8

subsequent eyewitness identification at trial. The defendant Simmons was charged with committing an armed robbery of a savings and loan institution that occurred in front of five witnesses who were employees of the institution. *Id.* at 380-81. One day after the robbery, each of the witnesses was shown a series of at least six photographs, with the defendant and another man "each appearing several times in the series." *Id.* at 385. Each witness identified the defendant, and none identified the other man whose photograph recurred in the series, "who apparently was as prominent in the photographs as Simmons." *Id.* As has Dunlap, the defendant in *Simmons* argued "that in the circumstances the [pretrial] identification procedure was so unduly prejudicial as fatally to taint his conviction." *Id.* at 383.

The Supreme Court set forth in *Simmons* a governing principle for judicial review of convictions that, like Dunlap's, were based on in-court identifications following pretrial identification using photographs. The Court held that after considering a conviction "on its own facts," courts may set the conviction aside "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 384.

We first consider whether the state court "'applie[d] a rule that contradicts the governing law set forth in'" *Simmons*. *Price*, 538 U.S. at 640 (quoting *Williams*, 529 U.S. at 405-06). In affirming Dunlap's conviction, the Appellate Division considered "whether there was any substantial likelihood that the defendant would be singled out for identification." *People v. Dunlap*, 780 N.Y.S.2d at 172. The Appellate Division concluded that "[u]nder the totality of the circumstances surrounding the pretrial identification . . . , the photographic arrays were not unduly suggestive" and that "the potential for irreparable misidentification . . . did not exist." *Id.*

9

at 172-173. Applying various state precedents, the Appellate Division also concluded that "[t]wo separate showings of a suspect's picture in successive photographic arrays are not per se impermissibly suggestive" and that "the fact that a suspect is the only person whose photo was repeated in successive photographic arrays, while a practice not to be encouraged, does not per se invalidate the identification procedure." *Id.* at 172. These various conclusions do not contradict the governing law established in *Simmons*, or any other principle of federal law clearly established by the Supreme Court.

We next consider whether the state court decision involved an unreasonable application of clearly-established federal law. It is not sufficient for a habeas petitioner to convince the district court that the state court applied a federal legal standard incorrectly; instead the petitioner must demonstrate that the legal standard was applied in a way that was objectively unreasonable. *Price*, 538 U.S. at 641 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam)). Thus, a federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable. *See id.* at 641-43; *see also Woodford*, 537 U.S. at 25 ("An '*unreasonable* application of federal law is different from an *incorrect* application of federal law.'" (quoting *Williams*, 529 U.S. at 410, and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002))).

As the Supreme Court stated in *Yarborough*, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. In *Simmons*, the Supreme Court spoke in general terms in holding that suppression of in-

10

court identification testimony will not result unless, based on the totality of the circumstances, the pre-trial photographic identification presents a very substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384. This rule affords significant discretion to the state court.

In affirming Dunlap's conviction, the Appellate Division "agree[d] with the hearing court's determination that the photographic arrays were not unduly suggestive," and it did so "[u]nder the totality of the circumstances surrounding the pretrial identification." *People v. Dunlap*, 780 N.Y.S.2d at 172-73. Although acknowledging that the use of successive photo arrays in which the defendant is the only person who is repeated is not a practice to be encouraged, the Appellate Division considered it significant that different photographs of Dunlap were used, and that the photographs were placed in different locations, in the successive arrays. *Id.* at 172. The Appellate Division concluded that "the potential for irreparable misidentification such as where a witness repeatedly views the same photograph of a defendant until a positive identification results did not exist." *Id.* These conclusions did not involve any unreasonable application of the rule established in *Simmons*. Habeas relief is therefore not permissible under § 2254(d)(1).

The district court properly identified *Simmons* as the relevant, clearly-established federal law under § 2254(d)(1), but it did not discuss whether the state court decision was contrary to *Simmons* or whether the state court applied *Simmons* unreasonably. Instead, the district court undertook its own analysis of whether the identification procedures were impermissibly suggestive, applying New York state law and the precedent of this Court. *See Dunlap v. Burge*, No. 05 Civ. 7054, slip op. at 9-12. Doing so did not comport with the procedure Congress

11

established in AEDPA, as construed by the Supreme Court. *See Williams*, 529 U.S. at 386

("AEDPA plainly sought to ensure a level of deference to the determinations of state courts,

provided those determinations did not conflict with federal law or apply federal law in an

unreasonable way." (internal quotation marks omitted)); *see also Woodford*, 537 U.S. at 24

("[R]eadiness to attribute error is inconsistent with the presumption that state courts know and

follow the law. . . . It is also incompatible with § 2254(d)'s 'highly deferential standard for

evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), which demands

that state-court decisions be given the benefit of the doubt.").

## III.  CONCLUSION

Because Dunlap has failed to establish grounds entitling him to relief under 28 U.S.C.

§ 2254(d), the district court's order denying Dunlap's application for a writ of habeas corpus is

AFFIRMED.